JONE BRASHEAR, RESPONDENT, v. MISSOURI POWER & LIGHT CO., APPELLANT.—49 S. W. (2d) 639.

Kansas City Court of Appeals. May 2, 1932.

*H. P. Lauf* and *Ira H. Lohman* for respondent.

*Irwin & Bushman* for appellant.

ARNOLD, J.—Action in damages for personal injury. The facts shown are that plaintiff was a resident of Jefferson City, Missouri, married, and at the time of the alleged injury on which this suit is based, was living with her husband at 1522 East High Street in said city; defendant was a corporation, organized under the laws of Missouri, engaged in manufacturing, transmitting and furnishing artificial gas to the people of said city and maintaining offices there for transacting its usual and ordinary business.

This suit was instituted in the Circuit Court of Cole County, Missouri, on October 8, 1930, by formal petition which was amended

February 4, 1931, by interlineation. Plaintiff alleged that on August 6, 1929, defendant was engaged in manufacturing and supplying gas, and owned and operated pipes, lines and conduits in Jefferson City; that on said date and for a long time prior thereto, for the purpose of transmitting its gas, defendant maintained, operated and used pipes of about two and one-half to three inches in diameter; that prior to and on said date, defendant, through its servants, agents and employees, had constructed a pipe across the private walk and steps of plaintiff, leading from the house occupied by her to High Street, a public street; "that the said pipe was negligently constructed and negligently laid across said steps and without any permit or authority to do so, which steps were then and there on said date being used by plaintiff, and that the said pipe was negligently and carelessly placed on said steps and so maintained by said defendant herein." It is alleged defendant was . without right to maintain said pipe and same was maintained against the wishes of the parties then occupying the said house, and "that said defendant, its agents, employees and servants even though being notified to remove the same from said premises, and by reason of its negligence, carelessness, actions and conduct, said plaintiff was injured as herein set forth and contained.

"Plaintiff herein further states that the said corporation had no right or authority to place the said pipe across the said steps which it became necessary for her to use in going to and from the residence occupied by her and that the same was negligently and in careless manner placed across the said steps occupying thereby a large portion of said steps, and extended on and across said step, and that the same was not properly fitted and constructed, so that the same was near to the said step, and by reason of said construction and the placement of said pipe it took up a portion of said step, so that the same was dangerous and constituted a nuisance to all parties and persons who were compelled to use the same as an entrance or exist to plaintiff's home."

The petition further alleges that, as plaintiff was leaving her home to go to said High Street, by reason of said pipe, and the negligent construction thereof, being placed upon said step, "plaintiff was tripped and fell down a flight of fifteen steps and for a distance of on or about fifteen to twenty feet, and that by reason of the negligent, careless and dangerous placement of said pipe by said defendant, its servants, employees and agents, and by further reason of the maintenance of said nuisance, said plaintiff herein was severely injured and by reason of said fall and the negligence and carelessness of said defendant in unlawfully erecting, maintaining and placing the said pipe and by reason of the maintenance of a nuisance on the

said premises then and there occupied by the said plaintiff, that plaintiff herein fell over the same,'' etc.

The alleged injuries sustained by plaintiff are then enumerated and described, including, among others, dislocation of her left knee, torn ligaments in her left leg about her knee, severe bruises all over her body, sprained back and injuries to her right shoulder; that she has suffered great pain and agony; that she has incurred and is now liable for doctor bills and hospital bills; and that said injuries are permanent. Judgment is asked in the sum of $30,000.

The answer admits defendant's corporate existence, that it is engaged in business at Jefferson City, as pleaded in the petition, and was so engaged on August 6, 1929; that it uses pipes and pipe lines as and for the purposes alleged; that it had caused a pipe line for carrying gas to the house where plaintiff was living to be laid across the walk and steps for said purpose; but denies the same was negligently constructed, and denies same was constructed without authority; denies it had no right so to construct said line, and denies generally each and every other allegation contained in the petition.

The answer further alleges that during the month of August, 1929, and prior thereto, High Street in the City of Jefferson, was under course of reconstruction by the State Highway Department, along and in front of the premises where plaintiff was living; that it became necessary to widen said street and in the blasting of rock adjacent thereto it became and was necessary for defendant to take up and relay its pipe line temporarily, so as to furnish gas to consumers east of plaintiff's residence; and to that end defendant acquired the consent of the owners of said property, in which plaintiff thereafter lived, to lay said pipe line temporarily across the walk leading to said residence, with the intent and purpose of relaying said pipe permanently in the ground, as soon as said street had been completed; that said pipe was about two inches in diameter and was laid across and in the angle of the sidewalk or steps leading up an incline to said residence; that there were six inches or more of room on said steps not occupied by said pipe, which was ample width for persons ascending and desceding said stairway or steps, without coming in contact with said pipe; that said pipe had been laid across and over said sidewalk prior to the time plaintiff moved into said property, and that plaintiff knew ''or by the exercise of ordinary care upon her part could have known, that said line was laying across said sidewalk or steps before she rented said premises and she well knew that said pipe line had not been removed; that it was open and obvious and plain to be seen and she well knew that it was there at all times and she frequently and continuously passed over it for a long time prior to the date of her alleged injury, and having full knowledge of the presence of said pipe line and being fully aware of its

condition and the condition of said steps she not only rented said property in that condition but thereafter continuously used it without complaint, and that while so using it she carelessly and negligently and without regard for her own safety stepped upon it or tripped upon it and fell, if she did fall, and was thereby injured, if she was injured, and that her said act of falling, if she did fall, and the result and injuries thereof, if she sustained any, were directly caused and due to her own carelessness and negligence contributing thereto.''

The reply was a general denial. The cause was tried to the court and jury, resulting in a judgment for plaintiff in the sum of $7500. Motions for new trial and in arrest of judgment were overruled, and defendant appeals.

At the close of plaintiff's case, and again at the close of all the evidence, defendant asked an instruction in the nature of a demurrer, both being refused. Five assignments of error are presented and vigorously urged, under defendant's points and authorities.

It is first urged the court erred in overruling defendant's demurrer at the close of all the evidence, and, in support of this charge, it is argued plaintiff was guilty of negligence as a matter of law, for, whatever danger inhered in the condition was perfectly obvious; there was no lurking peril, nothing being hidden or concealed. Of course, in the solution of this question, the evidence presented at the trial must govern. It has been held, as defendant points out, that there are three constituent elements necessary to make a case in a common law action for damages on account of negligence. First, a duty on the defendant to protect the plaintiff from the injury complained of; second, failure to perform that duty; and, third, injury as the result of the failure. [Zitzmann v. Glueck Box Co. (Mo.), 276 S. W. 23, 25; Shaw v. Goldman, 116 Mo. App. 332, 337, 92 S. W. 165.] It is the law that plaintiff has no case to submit to the jury if the defendant was not guilty of negligence which was the proximate cause of the injury; or, if plaintiff was guilty of contributory negligence as a matter of law. [Waldmann v. Srainka Const. Co., 289 Mo. 622, 633, 233 S. W. 242; Woodson v. Met. St. Ry. Co., 224 Mo. 685, 701, 123 S. W. 820; Wagner v. Wells (Mo. App.), 261 Mo. 682, 684.] From these general statements of the law defendant proceeds to argue that the laying of the pipe in the manner it was laid was not negligence; that the state of the evidence was such as to leave the cause of plaintiff's fall to conjecture and surmise; that a causal connection must be shown between the accident and the negligence charged, and that plaintiff failed to meet any of these requirements.

These general propositions of law are not denied by plaintiff, but she insists the testimony fully establishes a case bottomed upon a

charge of general negligence, to the effect that defendant constructed and maintained a pipe across the private sidewalk and steps leading from the house occupied by plaintiff; and that the pipe was negligently constructed and negligently laid across said steps without a permit or authority so to do; and that said pipes was negligently and carelessly placed on said steps and so maintained by defendant.

As we construe the petition, it first charges general negligence, followed by a specific charge of negligence that the pipe was negligently and carelessly placed and maintained. In such a situation, the established rule is that where there is a general charge of negligence, followed by a charge of specific negligence, the latter must be proved to make a case for the jury.

A further statement of the facts, as shown by the evidence, is needed at this point, being mindful of the rule of law that in the consideration of a demurrer, the evidence of the plaintiff must be accepted as true, and all reasonable inferences to be drawn therefrom, as well as from the defendant's evidence, must be resolved in favor of the plaintiff. The testimony shows that at the time of the trial, plaintiff was forty-one years of age; that she was rather stout and had an impediment in her left leg, present from childhood, which rendered that leg somewhat shorter than its fellow—perhaps an inch or more—causing a limp. It appears plaintiff and her husband had rented the High Street property and moved therein about August 1, 1929. The house was built upon a high terrace and connected with the street by a number of stone steps; there was a level landing some four or five steps from the top, and from the landing down to the street, there was a series of some fourteen or fifteen steps. The pitch of the terrace was very precipitous. Plaintiff had lived in the house only a few days and had ascended and descended the steps but a few times. The testimony shows these steps were the only means of ingress and egress between the house and street; that the steps were about eleven and three-fourths inches in width, with risers of about seven inches. The gas pipe in question was of two inch diameter and had been laid across the steps prior to plaintiff's occupancy and while the house was occupied by another tenant, and was so placed for the purpose of supplying gas to that house and others east of it, because of the reconstruction and widening of the street; the said pipe was laid in the angle of the first step below the landing mentioned. Testimony in plaintiff's behalf is that the pipe was not snugly laid in the angle of the step and riser, but at the east side of the step the pipe was slightly above the angle and out about two inches, thus reducing the space on the step for the placing of the foot to approximately seven and one-half inches. On the day in question, in descending the steps, plaintiff caught her foot on the pipe and fell down the steps to the sidewalk, injuring her

left knee, displacing the patella and tearing the ligaments, and causing other injuries. Plaintiff testified she knew the pipe was there and was proceeding carefully. She was not positive as to what part of her foot struck the pipe, but thought it was the heels of both her shoes, as both heels were skinned.

There was testimony to the effect the pipe was intended to remain temporarily where it was placed. It was shown the pipe could have been placed beneath the steps and defendant's evidence showed this was afterwards done. Defendant strenuously argues plaintiff's testimony alone shows she was guilty of contributory negligence, basing this contention chiefly on the following excerpt from plaintiff's cross-examination:

"Q. And do you know how come you to catch your foot? A. I glanced down, trying to locate the pipe, and stepped and I must have struck my other foot against the pipe.

"Q. Which foot did you strike? A. It is hard to say when walking down steps— I don't know which step or foot it was.

"Q. What kind of shoes did you have on? A. Oxfords.

"Q. High heels or low heels? A. Medium heels.

"Q. Do you know whether you caught your foot on the pipe? A. I know I struck my heel.

"Q. But you don't know on what? A. On the pipe.

"Q. But don't know which foot? A. No, sir.

"Q. Was you paying any attention to it? A. I glanced down, yes, sir, before I stepped, and I just walked down like anybody else would do.

"Q. You saw it was there at the time you stepped? A. Yes, sir.

"Q. And there was plenty of room? A. Well, I can't say,— there was the step.

"Q. You just made a mis-step? A. No, sir.

"Q. Well, how come you to step on the pipe? A. You would either have to or hit the pipe,—the pipe took up a good part of the room of the step."

While plaintiff is not positive as to the exact manner in which she struck the pipe with her heel or heels, we must hold her testimony is of sufficient substantiality to take the case to the jury. The jury would have the right to consider all the circumstances, and not charge plaintiff with contributory negligence because she could not remember with more definiteness the minute details of the fall, especially in view of testimony showing that on reaching the bottom of the steps, plaintiff fainted and remained in a fainting condition for some time.

Defendant urges the point of assumption of risk as a further reason why the demurrer should have been sustained. Plaintiff points out this defense is not available to defendant because not pleaded in the answer, and cities the case of Dietzman v. Screw Co., 300 Mo.

196, 254 S. W. 59, 64, wherein the Supreme Court held that a "risk growing out of negligence of the master is not assumed by the servant," and that "a further and complete answer is there was no plea of assumption of risk." In support of the contrary view, defendant cities the case of Guthrie v. Gillespie, 319 Mo. 1137, 6 S. W. (2d) 886, 892, to the effect that assumption of risk is available under a general denial. But, on examination, that rule is found to apply to cases involving master and servant, and is not applicable here. Of course we will not undertake to reverse the Supreme Court in either of the cited cases. It is defendant's contention that plaintiff leased the premises with knowledge of the existing condition, and therefore assumed the risk of using the steps. We hold that contention unsound, for, as said in the Dietzman case, supra, negligence of the defendant may not be assumed by the plaintiff. Negligence of the defendant having been established it cannot be nullified by assumption of risk by plaintiff. Moreover, defendant asked no instruction on assumption of risk, and the same is not presented in the motion for a new trial. We hold the court did not err in refusing to give the peremptory instruction in the nature of a demurrer at the close of all the evidence.

The next point urged is the court erred in admitting, on behalf of plaintiff, evidence prejudicial to defendant, over defendant's objection, in particular to the effect that after the accident the gas pipe was moved and placed underground; and, in permitting plaintiff to ask a medical expert to answer a hypothetical question which assumed facts not in evidence, and which did not correctly state facts in evidence. As to the first of these objections, the record shows that counsel for defendant offered no objection to the testimony of plaintiff's husband when he stated that Mr. Dilger, an employee of defendant, had informed him on the day plaintiff was injured, that he intended to move the pipe "next week." And in the cross-examination of this witness, defendant's counsel elicited the information that the pipe was taken out "on Friday afterwards." Also, in the direct examination of defendant's witness, Keith Brown, the following questions and answers appear:

"Would it have been possible to have moved that pipe away from the house without breaking that service? A. It would not. Q. Who took that pipe away from there? A. I did.

. . . . . . .

"Q. Was it in the same condition,—or was there any change in the location of the pipe? A. Only that we run it under the steps."

It is apparent from the record that defendant's counsel invited the error of which he now complains. Defendant's instruction No. 9, told the jury to consider no evidence showing or tending to show that after the accident the defendant changed the location of the

pipe, as such evidence "is no proof whatever of defendant's negligence in the first instance." On this showing, defendant is in no position to complain in this respect.

As to the hypothetical question propounded to the medical expert, the record shows there was an objection to the question on the ground it did not correctly state the facts, and that it assumed facts not in evidence. The record discloses the court refused to permit the witness to answer until the court itself had suggested the proper form of the question, which then met defendant's objections. We think the question, as propounded, not open to the criticism urged against it, and, therefore, rule this point against defendant.

Appellant complains of plaintiff's Instruction "A," given by the court, in that it purports to cover the entire case and to direct a verdict, yet (1) it fails to define what constitutes negligence, or to state what degree of care was required of defendant in the premises; (2) that part of the instruction reading "and that the same was due to the negligence of the defendant in placing said pipe in the manner and place in which it was placed," assumes the pipe was laid in a certain manner and place when it is a disputed question, for the jury to determine, the manner in which the pipe was laid. The instruction is as follows:

"The court instructs the jury that if you believe and find from the evidence that the defendant constructed and placed a gas pipe across the steps used by plaintiff in going to and from her home and that said gas pipe was negligently and carelessly constructed by the defendant and that the plaintiff while exercising due care for her own safety, in going down said steps, fell or tripped over said pipe, if you find she so fell or tripped over said pipe, and that the same was due to the negligence of the defendant in placing said pipe in the manner and place in which it was placed, then if you so find your verdict will be for the plaintiff."

In Stid v. Railroad, 236 Mo. 382, 398, 139 S. W. 172, the Supreme Court has laid down the rule applicable to the assignment of errors in instructions, as follows:

"Defendant says that such instruction is erroneous, and assigns some reasons therefor. That it is erroneous we have no doubt, but as to the reasons assigned in the briefs, all of them may not be tenable. But be this as it may this instruction is properly challenged in the record, and the court may seek its own reasons for condemning it, if it be one which should be condemned. The reasons assigned here may be bad, but if there has been an exception to the action of the trial court in giving the instruction, such exception goes to the whole matter and the instruction may be condemned here for any reason which is apparent to this court."

Under the ruling in the case last cited, we may point out such defect as appears to the court. Whether the placing of the pipe was negligent depends upon the circumstances. If it was placed in the angle where there was no danger to a pedestrian using due care then it was not negligently placed. The language of the instruction reading "that the same was due to the negligence of the defendant in placing said pipe in the manner and place in which it was placed" constitutes a roving commission to the jury, and the instruction was erroneous. [Magrane v. Railroad, 183 Mo. 119, 132, 81 S. W. 1158; Yarnell v. Railroad, 75 Mo. 583; Martin v. American Magnestone Co. (Mo. App.), 247 S. W. 465; Moon v. Transit Co., 247 Mo. 227, 152 S. W. 303; Priestly v. Laederich (Mo. App.), 2 S. W. (2d) 631.] . A charge of error is also directed against plaintiff's Instruction "B," but, at the same time, in its brief, defendant says:

"We cannot contend that the giving of the instruction is such an error as entitles us to a reversal, but it entitles us to consideration in connection with the assignment that the verdict is excessive."

The objection is based upon the fact that the instruction tells the jury that if the issues be found for plaintiff, the verdict may not exceed the sum of $30,000, which is the amount asked in the petition. It is true, the Supreme Court has held such an item in an instruction is not reversible error, but it is nevertheless suggestive and objectionable. In the recent case of Bond v. Railroad, 315 Mo. 987, 1007, 288 S. W. 777, the court said on this subject:

"An instruction on the measure of damages which fixes a minimum amount which the jury may allow, without disclosing any reason why the court has fixed the minimum at the particular figure named, carries to the minds of the jury a clear implication that the court is of the opinion that the evidence warrants an assessment up to the amount specified. In an action for personal injuries, where many of the elements of damages are intangible, where the extent of the pecuniary loss is necessarily more or less conjectural and where sympathy always operates, such an instruction is especially harmful. Some day this court will no doubt hold that the giving of such an instruction, if followed by an excessive verdict is reversible error. In the meantime we follow the old precedents in declaring that the error can be cured by a remittitur."

The only remaining point urged for reversal is that the amount of the verdict is excessive, but as the case must be retried, that question may not arise on another trial. My reason of errors in plaintiff's Instruction "A," the judgment is reversed and the cause remanded. All concur.