BURLEY JONES v. CENTRAL STATES OIL COMPANY, A CORPORATION, APPELLANT.—No. 37590.—164 S. W. (2d) 914.

Division One, July 28, 1942.

Rehearing Denied, September 8, 1942.

Motion to Transfer to Banc Overruled, October 6, 1942.

*Morris E. Osburn* and *Price, Major & Alexander* for appellant.

94

*Lane B. Henderson, Waldo Edwards* and *D. L. Dempsey* for respondent.

HYDE, C.—This is an action for damages for personal injuries. Plaintiff had a verdict for $10,000.00, and from the judgment entered thereon, defendant has appealed.

Defendant's assignments go only to instructions and amount of the verdict. Plaintiff, his wife, and another, about 7 A. M., on May 2, 1940, were in a Ford pickup truck, riding in the same seat, with plaintiff driving, going south on U. S. Highway #63. About six miles north of Macon (just north of Axtel) according to plaintiff's evidence, his car was struck from the rear by defendant's large gasoline transport truck, without warning.

Plaintiff's petition alleged that, at said time and place, while plaintiff was driving on the right (west) side of the highway, defendant, by its agent R. J. Bailey, "carelessly and negligently drove and operated said truck (defendant's transport truck) and carelessly and negligently caused, allowed and permitted the same to run into, strike and into collision with the rear end of the motor vehicle of plaintiff with such great force and violence," etc., causing plaintiff to be injured.

The answer was a general denial and a plea of contributory negligence, alleging, among other things (1) that plaintiff negligently operated his truck on the wrong (east) side of the pavement; (2) that he negligently failed to turn his truck to the right so as to allow cars going in the same direction to pass on the left; and (3) that he negligently permitted his truck to swerve east across the center line of the pavement. The reply was a general denial.

The scene of the accident was at a place where the pavement was level, and the road ran almost straight north and south for about a quarter of a mile. The Wabash Railroad track was west of the highway with no fence between. There was a grader ditch between the pavement and the railroad right of way about two feet deep and about eight or ten feet wide. The pavement consisted of two 9-foot

concrete strips with a one-foot black center line between. It had earth shoulders about six feet in width. The day was clear and the pavement was dry.

Plaintiff's evidence showed that plaintiff was driving south at about 25 or 30 miles per hour on the right (west) side of the pavement, completely west of the black center line, and that plaintiff's car was struck from behind by defendant's truck, causing it to be turned over off of the highway. Plaintiff's own testimony was corroborated by the other occupants of his car and by other witnesses who came to the scene of the accident and observed burned rubber marks on the pavement made by the tires of defendant's truck. These witnesses said that there were two double sets of tire marks leading to the place where defendant's truck left the highway (defendant's truck had ten wheels, with four wheels at each end of the tank) and that one set of these marks nowhere crossed east of the center line of the pavement. Defendant's truck did not turn over, but went off the highway and stopped on the railroad track 267 feet from the place of the collision. Its right front fender and headlight were bent and the right side of the radiator damaged.

Defendant's driver testified that he had come that night from Ottawa, Kansas, to Kirksville with 3000 gallons of gasoline which had been unloaded there about 6 A. M., and was driving back with his tank empty. He said that he followed plaintiff's car at about 35 miles per hour for a mile or two, and then attempted to pass it. He noticed that "the wind was coming in gushes"; and said: "It seemed to affect my driving and I noticed other cars would swerve across the black line backwards and forward, I guess from the gushes of wind." He also said plaintiff's car "would swerve across the pavement once in a while I am sure from the causes of the gushes of wind." He said that he blew his horn twice "pulled over and straightened my truck out and made an attempt to pass." He further testified: "All at once the wind seemed to swerve him right over into my right wheel. . . . The front wheel of my car were practically parallel with the rear wheel of his truck. . . . We got tangled up and it swerved us off on the right side of the pavement. . . . I went on across the ditches and over onto the Wabash Railroad track. . . . They come loose just about the time they come off. . . . In jostling around I must have hit the accelerator." He said that his truck was east of the black center line at the time of the collision.

Defendant also had evidence from weather reports both at Kirksville and Columbia that there was a gusty wind blowing at the time; described as one "that varies largely in its velocity, that is, it would be relatively light wind this moment then jumps up twenty or thirty miles, you know, and then back—oscilates." These reports showed wind velocity between 6:35 A. M. and 8:35 A. M., varying from 17 to 26 miles per hour.

Defendant contends that instruction No. 1 erroneously submitted general negligence and "gave the jury a roving commission." Plaintiff claims that his instruction No. 1 "did not submit generally the question of defendant's negligence," but says that, if so, "the character of the occurrence pleaded and in evidence, is so unusual and outside common and usual happenings that plaintiff is entitled to the application of the res ipsa loquitur doctrine."

We do not think the res ipsa doctrine is involved. Plaintiff did not intend to rely on it but was attempting to submit specific negligence. Therefore, such cases as State ex rel. Brancato v. Trimble, 322 Mo. 318, 18 S. W. (2d) 4, and other cases denying the right to rely on res ipsa in certain automobile collision cases (cited by defendant), are not in point. Defendant's claim that only general negligence was submitted is based solely on the following part of instruction No. 1 set out in defendant's brief, to-wit: "And further find and believe from the evidence that on said day and at said time and place upon said highway hereinbefore mentioned, the defendant carelessly and negligently caused, allowed and permitted said transport truck, if you so find, to run into, strike and into collision with the rear end of the said pickup truck plaintiff was driving, if you find from the evidence that it did so, and further find and believe from the evidence that as a direct and proximate result thereof plaintiff was injured." However, this was not the whole factual situation submitted.

This instruction, after hypothesizing certain facts about the highway, continued as follows:

"And further find from the evidence that on said second day of May, 1940, between seven and eight o'clock A. M., the said plaintiff was driving said pickup truck in a southerly direction on said Federal Highway No. 63 and on the west and right hand side of the pavement on said highway and west of the center line thereof, if you so find, at a point on said highway north of Axtel, Macon County, Missouri, if it was, mentioned in the evidence, and further find and believe from the evidence that on said May 2, 1940, and at said time and place, if you so find, the defendant was driving and operating a motor vehicle, to-wit, the motor oil transport mentioned in the evidence, southwardly on said Federal Highway No. 63 behind the said pickup truck plaintiff was driving, if you so find, and further find and believe from the evidence that on said day and at said time and place on said highway hereinbefore mentioned, the defendant carelessly and negligently caused, allowed and permitted said transport truck, if you so find, to run into; strike and into collision with the rear end of the said pickup truck plaintiff was driving, if you find from the evidence that it did so, and further find and believe from the evidence that as a direct and proximate result thereof plaintiff was injured, . . . then your verdict will be for plaintiff, provided you further find and believe from evidence that at the time

of and prior to said collision, if you so find, the plaintiff, Burley Jones, was exercising the highest degree of care in driving and operating the said pickup truck hereinbefore mentioned."

Moreover, defendant submitted six instructions on contributory negligence (given by the court) which authorized a verdict for it, if "at the time and place in question plaintiff, Burley Jones, negligently failed to keep said automobile as close to the right hand side of said highway as practicable"; if "Jones negligently drove and operated said automobile upon the east or left hand side of the center line of the paved portion of said highway"; if "Jones negligently turned said automobile upon the east or left hand side of the center line of the paved portion of said highway"; if "Jones negligently failed to turn said automobile as far as reasonably possible to the right in order to allow free passage on the left of said automobile by defendant's motor truck"; if "Jones negligently allowed and permitted said automobile to swerve, across the center line of the paved portion of said highway, to and upon the east or left hand side of the center line of the paved portion of said highway"; or if "Jones negligently allowed and permitted said automobile to travel across the center line of the paved portion of said highway, to and upon the east or left hand side of the center line of the paved portion of said highway."

Defendant says that plaintiff's evidence tends to show (1) failure on the part of the driver of defendant's truck to keep a lookout; (2) failure to "sound his signaling device" when he overtook plaintiff's truck and desired to pass in violation of Section 8385(e), R. S. 1939; (3) excessive speed; (4) failure to pass on the left of plaintiff's truck in violation of Section 8385(e), R. S. 1939; and (5) failure to slacken speed, swerve or divert the course of its truck; and that plaintiff should have submitted one of these. Except for excessive speed (which certainly did not appear per se), these are all matters of omission. While no doubt there was at least circumstantial evidence sufficient to authorize the submission of any of these, this should not preclude plaintiff from submitting instead an act of commission, also warranted by the evidence. It seems clear that this is what plaintiff was attempting to do.

Plaintiff's instruction authorized his recovery only if the jury found that defendant was "driving and operating" its transport truck south "*behind* (plaintiff's) pickup truck," while plaintiff was driving it south "*on the west* and *right hand side* of the pavement" and "*west of the center line*," and that defendant "negligently *caused*, allowed and permitted" *its* transport *truck "to run into*, strike and into collision with *the rear end* of the pickup truck" of plaintiff "at said time and place." (It was conceded by both parties that plaintiff proceeded without any change of speed.) Then by defendant's instructions, a verdict was required against plaintiff, not only if plaintiff "drove" or "turned," or permitted his car "to

swerve," or "to travel" across the center line; but also if he failed to keep it "as close to the right hand side of said highway as practicable" or failed to turn it "as far as reasonably possible to the right." Therefore, plaintiff was denied recovery even if he got too close to the center line, without actually getting any part of his car over it; and he could only recover if defendant caused his truck to run into the rear end of plaintiff's car from behind when it was completely west of and beyond the center line.

Instructions authorizing recovery for negligence should hypothesize the essential facts which would constitute negligence under the evidence. The purpose of this is to inform the jury what the essential controverted facts are, so that they will make a decision as to the actual facts, which they believe existed, and let such decision as to the facts determine the result to be reached in their verdict. The matter of submitting facts in instructions must be reasonably administered. "There ▆▆▆▆ are some acts which result in damage that are so simple and out of the ordinary course of events that to merely state the ultimate facts is about as specific an averment as can be framed into language." [Monan v. Arkansas Grocer Co., 216 Mo. App. 289, 264 S. W. 486, where an instruction in the language of the petition was held good in a collision case.] Here the ultimate fact, "negligently caused" the transport truck "to run into . . . the rear end of the pickup truck," is no doubt stated in a way that would be too general if it stood alone. But when the requirements are added that it must be further found that the transport truck was being driven behind plaintiff's car, and that his car was "west of the center line" when struck, then a rather narrow and simple issue was presented. This was: Did defendant's driver run its truck into the rear end of plaintiff's car while plaintiff's car was being properly driven in the part of the highway where it should have been and was entitled to be? This meant: Did defendant's driver so carelessly guide its truck that he drove it against the rear end of plaintiff's car, in attempting to drive around it as he said he intended to do? Surely this was an issue which the jury could understand as well as excessive speed or any of the matters of omission suggested as submissible by defendant. (Quaere: Which is more specific?—Defendant hit plaintiff on the nose—or—Defendant failed, refused and neglected to keep his hands in his pockets and to prevent them from coming in contact with plaintiff's nose.)

An earlier case, very similar in principle, is Beier v. St. Louis Transit Company, 197 Mo. 215, 94 S. W. 876, where plaintiff's wagon was being driven west along the north side of Gravois Avenue completely off of the street car tracks, when defendant's street car ran into the rear end of another wagon driving west partly on the street car track, forcing it against plaintiff's wagon, throwing him down an

embankment. After hypothesizing the position of the vehicles, plaintiff's main instruction continued as follows:

"And that a car of defendant in charge of its servants, or employees, ran into said wagon and forced said wagon against a wagon being driven along said Gravois Avenue in a westerly direction by the plaintiff, Ernst Beier, and caused the wagon with said Ernst Beier to be thrown down an embankment and injured, then the jury will find a verdict for the plaintiff Ernst Beier."

The court discussed the matter as follows:

"It was error (because the instruction "puts the case to the jury on broad lines"), defendant's learned attorneys say, because defendant's negligence is alone predicated in the petition on the rapid speed and the failure to ring bell or gong. In other words, the court took unlawful speed away from the jury and took from the jury the ringing of the bell, hence, there was nothing left to predicate negligence on. But we do not read plaintiff's petition that way. The first paragraph charges defendant with so 'negligently, carelessly and unskillfully operating said car that it suddenly and with great force ran into a wagon,' etc., then being driven in a westerly direction, etc., and forcing said wagon against plaintiff's wagon and upsetting the latter over an embankment on the north side of Gravois Road and caused plaintiff to fall thereunder and be seriously injured. The petition further counts on the theory that it was defendant's duty to keep said car under control, under surrounding conditions and circumstances, and that defendant negligently omitted that duty, and it avers that defendant's motorman knew, or by the exercise of ordinary care would have known, that the car and the wagons would come in contact at or near the bridge. If, now, we apply the law as declared in instruction 1 to the facts of this case, and to the pleadings, as thus interpreted, the harmony of the instruction with the pleadings and with the facts in judgment and with the general principles of law is apparent."

It is true that the Beier instruction also required a finding as to whether or not the motorman saw, or by due care would have seen, the wagon on the track in time to have stopped his car. But how could it have aided in the understanding of the issues by the jury in this case to have said "and further find that defendant's driver saw, or in the exercise of the highest degree of care could have seen, plaintiff's car ahead in time to have stopped, slackened speed, or swerved," etc. There is no controverted issue as to seeing plaintiff's car here because defendant's driver admitted that he saw it and followed it. Likewise, there is no question of stopping or slackening the speed of defendant's truck in this case because what caused the trouble was defendant's increase of speed. Its truck could have continued at the same rate of speed behind plaintiff's car as it had for a mile or two without any chance of collision; or, even when its speed

was increased, could have passed it safely by first getting completely on the other side of the center line of the highway. As to swerving, defendant's driver claimed that he was trying to drive around plaintiff's car, and, if plaintiff's evidence is true, plaintiff did not swerve, so the real question was: Did defendant's driver carelessly drive against the rear end of plaintiff's car in making the attempt to pass it? (For an instruction, submitting alternatively both omission and commission in a case of collision while passing, see 1 Raymond, Missouri Instructions, 354, p. 1218. However, this form was used in a sideswipe collision where the negligence was either carelessly swerving to the right or failure to swerve to the left. Certainly it would have been proper there to have submitted only the act of commission if the evidence showed it occurred.) The Beier case is applicable here, and the complete factual situation was submitted even more fully and specifically here than in that case.

Richardson v. Kansas City Railways Company, 288 Mo. 258, 231 S. W. 938, also presents a similar situation. It was a rear end collision of a street car with a truck ahead of it. This court discussed the matter as follows:

"One specification (of the petition) was that appellant's employees 'failed and neglected to run and operate said car in a manner that said car would be under such control that it would not be run into and against said automobile when they saw, or by the exercise of reasonable care could have seen, said automobile truck ahead of said car on said track and street.' There was evidence tending to support this allegation. It is a specification of negligence and was pleaded as such. The instruction required the jury, before finding for respondent, to find: (1) That she was seated in an automobile truck (2) over which she had no control and (3) which was standing still upon appellant's track ahead of the car, and (4) that respondent was in danger of being struck if the car did not stop and continued on its course; (5) that said street car was so negligently operated, managed, or controlled by the motorman that it was negligently caused to be run into and strike the truck; (6) that the motorman negligently ran the car against the truck when he saw or in the exercise of ordinary care could have seen the truck on the track ahead of the car, and by the exercise of ordinary care could have stopped the car and have avoided striking the truck. . . . It is true that instructions must be within the pleadings; that an allegation of general negligence is restricted by specifications of particular negligence; and that instructions, in such a case, must submit nothing outside the specific charges. (Or if generally stated only in the petition, as here, the submission must be what was specifically proved.) In this case among the specifications of negligence which follow the general charge is that already quoted. That this allegation was in itself specific, and not a mere general charge of negligence, is shown by the

decisions cited by respondent. Davidson v. Transit Co., 211 Mo. l. c. 361, 109 S. W. 583; Beier v. Transit Co., 197 Mo. l. c. 232, 233, 94 S. W. 876; Thompson v. Livery Co., 214 Mo. l. c. 493, et seq., 113 S. W. 1128. This allegation was fairly submitted to the jury by the assailed instruction.''

This court said of a similar statement in the Davidson case:

''In what respect is that declaration wanting in specification? It describes the situation, the plaintiff's position and the environments and then says that the defendant drove its horses against her violently, knocking her down and trampling on her, and that it was due to the driver's negligence in driving the horses. What other act could she specify? Driving a team of horses at rapid gait into a narrow space where people are standing in plain view of the driver, is prima-facie evidence of negligence and the statement of such acts accompanied with a charge of negligence is a specification of acts of negligence.''

Another similar case is State ex rel. Kansas City Railways Company v. Trimble (Mo. Sup.), 260 S. W. 746, where a verdict based on a rear end collision instruction in similar language was affirmed by the Kansas City Court of Appeals and this court on certiorari refused to quash the ruling. There is also another well settled principle concerning instructions which is applicable here. That is: If an instruction requires the jury to find facts which if true could only mean that the defendant was guilty of negligence per se or as a matter of law, then the instruction is good even if it does not require the jury to find that such facts constitute negligence, because ''the law draws the conclusion in such cases''; or in other words, the only remaining question for the jury (if it finds such facts) is proximate cause. [Swain v. Anders, 349 Mo. 963, 163 S. W. (2d) 1045, decided May Term 1942, citing 1 Raymond—Instructions 15, Sec. 5; Oglesby v. St. L.-S. F. R. Co., 318 Mo. 79, 1 S. W. (2d) 172, and cases cited, l. c. 179; Thompson v. City of Lamar, 322 Mo. 514, 17 S. W. (2d) 960, and cases cited l. c. 971; see also Christiansen v. St. Louis Public Service Co., 333 Mo. 408, 62 S. W. (2d) 828; Borgstede v. Waldbauer, 337 Mo. 1205, 88 S. W. (2d) 373, (12) l. c. 378; Mrazek v. Terminal R. Assn., 341 Mo. 1054, 111 S. W. (2d) 26.] Instruction No. 1, here, did require a finding of plaintiff's position in a place where he had the right to be, operating his car properly as required by the highest degree of care, together with his environment and other facts of the situation which showed he could not have been negligent, and then required the finding of the affirmative act by the defendant of driving its truck into that part of the highway and against the rear end of plaintiff's car. Surely all these facts hypothesized would conclusively show active negligence on defendant's part as a matter of law, so that if the jury believed them no result other than a finding of negligence could be reached. We, therefore, hold that this in-

struction did sufficiently submit specific negligence, shown by substantial evidence, and is not subject to the criticism of giving the jury a roving commission.

Plaintiff's instruction No. 2 was on the measure of damages and in its conclusion told the jury that if they found for plaintiff "that the total amount which you may award him shall not exceed the sum of $25,000, which is the amount sued for in the petition." This concluding part of instruction No. 2 is challenged as improper. Such a statement in an instruction has not been held to constitute reversible error, but has been criticized. Bond v. St. Louis-San Francisco Ry. Co., 315 Mo. 987, 288 S. W. 777, l. c. 785; Brashear v. Missouri Power & Light Co., 226 Mo. App. 1160, 49 S. W. (2d) 639, l. c. 644.

In the Bond case, where the instruction did not even state that the amount it stated was the amount sued for, this court said:

"An instruction on the measure of damages which fixes a maximum amount which the jury may allow, without disclosing any reason why the court has fixed the maximum at the particular figure named, carries to the minds of the jury a clear implication that the court is of the opinion that the evidence warrants an assessment up to the amount specified. . . . Some day this court will no doubt hold that the giving of such an instruction, if followed by an excessive verdict, is reversible error."

In the Bond case the jury did return a verdict for the full amount stated in the instruction and this court found the verdict very excessive, since it ordered a remittitur of considerably more than half of the verdict. Here the jury was given a reason for the specified amount, namely, that it was the amount sued for; and they did not return a verdict for such amount or even half of it. Defendant's real claim is that the verdict is excessive and that stating the amount sued for in the instruction helped to make it so. However, we do not find the verdict excessive in this case. The jury is sure to be told the amount sued for at some stage of the trial, and, while stating in an instruction or even suing for a wholly unreasonable amount might be prejudicial, in some circumstances, we hold that it was not reversible error here.

According to plaintiff's evidence, he suffered compression fractures of the first lumbar vertebra and of the eighth dorsal vertebra, and a tearing of supporting spinal ligaments. He also had a rib fracture which punctured one lung, causing pleurisy and threatening traumatic pneumonia. Because of this condition, plaintiff could not be put in a cast for his spinal injuries until the last of May. This cast was not removed until October. Plaintiff continued to have numbness in his arm and fingers and also pain in his leg, which his doctors said was due to nerve involvement in the vertebrae injuries. There was evidence of a permanent injury to the intervertebral discs and a permanent deformity of the vertebrae of plaintiff's spine. Plain-

tiff was 64 years of age and had been unable to resume his work as a carpenter ▊ or to do any manual labor. His doctors' bill was $499.00, and his doctor said that more X-rays and a belt or brace would probably be required. While plaintiff had made a fairly good recovery, and defendant had medical testimony to show that he might not be permanently incapacitated, he had substantial evidence to show that his injuries were very serious and painful, and that they will have a permanent effect in limitation of movement. In Donley v. Hamm (Mo. Sup.), 98 S. W. (2d) 966, we affirmed a judgment for $8000.00 where the injury was the fracture of the lamina of a vertebra. We also reviewed therein other cases of vertebrae and back injuries. On the authority of these cases, we hold that the verdict in this case was not excessive.

The judgment is affirmed. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.