T. W. VAN WINKLE and L. L. Van Winkle, d/b/a T. W. Van Winkle & Son, Respondents,

v.

W. E. REED, Maude Reed, The Franklin County Oil Company, Foster Pulis, and Roy Casey, Appellants.

No. 22389.

Kansas City Court of Appeals.

Missouri.

June 4, 1956.

35. See In re McCaskey's Estate, 293 Pa. 497, 143 A. 209.

Russell D. Roberts, Kirksville, for appellants.

Jayne & Jayne, Kirksville, for respondents.

SPERRY, Commissioner.

Plaintiffs, T. W. and L. L. Van Winkle, were engaged in the business of drilling wells. Defendants, Mr. and Mrs. Reed, owned the Franklin County Oil Company, of which Mr. Pulis was manager, and defendant Casey operated a filling station. Plaintiffs sued all defendants for the sum of $1,217.51, alleged to be due them for construction of a well on the filling station property. From a judgment in the sum of $1,217.51, defendants appeal.

Plaintiffs had, previously, contracted with defendants to drill a well on their property. The well was to be about 40 feet deep and plaintiffs were to have been paid $400 for the completed well; but it was also agreed that if the well did not produce water plaintiffs were to be paid $120 in full for their services. This well was constructed but it failed to produce water. It was at that point that the contract involved in this suit was made by L. L. Van Winkle, acting for plaintiffs, and by Mr. Pulis, on behalf of defendants.

Regarding the contract Mr. L. L. Van Winkle testified as follows:

"A. Well, I came here and found Mr. Pulis down at the Bulk Plant. I told him that he couldn't develop a well in that sand out there, at that location, and also stated that he would have to go down into the rock for a water supply. He asked me how deep we would have to go and I told him I didn't know. He also asked me what the cost would be and I told him it would be $3.50 a foot for the drilling plus the cost of the casing that was used, and he told me to go ahead and put down a rock well.

"Q. And did you do that? A. We did.

"Q. And how deep did you go? A. Two hundred and twenty five feet.

"Q. And that casing was put into the well? A. The casing down to the rock is six inch; there's forty-two feet of it, I believe, and then down inside of the rock is lined with five and ⅜ casing, and there's right close to 200 feet of that in the well."

He also testified as follows:

"Q. (By Mr. Jayne) Well, what was the cost of the pipe? A. My cost of the pipe?

"Q. No, your cost to Mr. Pulis? A. $2.28 a foot on the 6 inch pipe and $1.75 a foot on the 5 and ⅜ inch.

"Q. Now, is that the reasonable value of the casing? A. It is.

"Q. During the digging of the first well, were you there part of the time? A. I was. I was down there."

Mr. Pulis testified to the effect that plaintiffs agreed to construct the first mentioned well for $400, if it produced water, and $120 if it failed to produce water; that the well was completed to a depth of 40 feet, as agreed, but failed to produce water. He further testified as follows: "A. He (L. L. Van Winkle) said that he didn't want to leave without leaving us a well and he said, 'I'll lose that screen there or lose $120 and go back up over there and drill you another well for the same money,' and he said that he would drill a deeper well for the same money, but it wouldn't be a sand screen well—just a straight casing well, and I said, 'Do you mean that you will drill it and it won't cost over the $400?' And he said, 'It won't cost you one penny more than $400.'" Mr. Pulis also said that he authorized plaintiffs to construct the second well on those terms; that nothing was said about any price per foot; that nothing was said about the cost of labor, casing, or other materials.

Plaintiffs main instruction is, in part, as follows: "* * * Now, if you further find and believe from the evidence that by such contract of employment plaintiffs agreed to dig said well and the defendants through their agent agreed to pay therefor the sum of $3.50 per foot for such digging, together with the reasonable cost of casing for lining such well, if you so find, and that such well was dug to a depth of 225 feet and that it was lined with 42 feet of 6 inch casing of the reasonable value of $95.75, and with 191 feet of 5 and ⅜ inch casing of the reasonable value of $334.25, if so, then your verdict shall be for plaintiffs on their petition in the sum of $1,217.51, and against the defendants, and you shall further find that plaintiffs are entitled to a lien on the premises described in plaintiffs' petition."

Defendants submitted the following in their main instruction, to-wit:

"* * * The jury is instructed that if you find and believe from the evidence that * * * plaintiff thereupon abandoned his original agreement, and proposed to dig a new well for Four Hundred Dollars ($400.00) and did propose to produce water, if you so find, then you shall find a verdict for plaintiff in the sum of Four Hundred Dollars."

■ Defendants contend that the court erred in permitting plaintiffs, over objection, to offer proof of *quantum meruit*, this suit being on contract. They cite O'Neal v. Mavrakos Candy Company, Mo.App., 255 S.W.2d 138, 140. The case at bar was tried by both parties, and by the court, on the theory that it is on contract. By the above instructions, both parties submitted on that theory. Plaintiffs contend that defendants agreed to pay, for the services rendered and materials furnished, the sum of $3.50 per foot for drilling plus the cost of the casing. Defendants contend that they agreed to pay $400 in full, for services and materials. Each side offered competent testimony tending to prove its exact version of the contract made. Therefore, defendant's point here

made is without merit. Furthermore, the record does not indicate that the court overruled any objection made to this testimony.

 Defendants also contend that when one contract is pleaded and another is proved it amounts to a total failure of proof. That proposition of law has no application to the case at bar. Both parties hereto by statements made in the presence of the court agreed, in effect, that "the terms of the contract are the only relevant issues involved herein"; and the court assented to that view.

 Defendants contend that error was committed in the giving of plaintiffs' main instruction because the evidence upon which a finding for plaintiffs may be based is not hypothesized. "The matter of submitting facts in instructions must be reasonably administered." Jones v. Central States Oil Company, 350 Mo. 91, 164 S.W.2d 914, 917. The instruction is not defective on that ground.

 It is urged that the jury is thereby authorized to find a verdict based on the "reasonable cost" and, also, on the "reasonable value" of the casing. It does not appear that such slight variations in the meaning of those respective terms, as used, would result in prejudice to defendants, or that it could have been misleading or confusing. There was testimony to the effect that the amounts claimed on account of casing used represented the reasonable value thereof.

 Complaint is also made that there was no evidence of an agreement to charge for more than 225 feet of casing but that the jury was authorized, by plaintiffs' main instruction, to find a verdict for the value of 231 feet of casing. The evidence on behalf of plaintiffs was to the effect that defendants agreed to pay for the reasonable value, or cost, of casing used in the well, and that such cost totalled $430. Defendants offered some evidence tending to show that such casing would not cost that much.

Under all of the evidence the question was for the jury.

The judgment should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.