**Mada HAYS, Plaintiff-Respondent,**

**v.**

**Richard PROCTOR, Jr., James Hodgson, and Joseph Strebler, Defendants,**

**Joseph Strebler, Appellant.**

**No. 31619.**

St. Louis Court of Appeals.

Missouri.

June 14, 1966.

Motion for Rehearing or for Transfer to Supreme Court Denied July 13, 1966.

758

Robert C. Ely, St. Louis, for defendant Hodgson.

W. W. Sleater, III, St. Louis, for defendant-appellant, Strebler.

Gray & Sommers, Don B. Sommers, St. Louis, for plaintiff-respondent.

RUDDY, Judge.

Plaintiff, Mada Hays, was awarded $2,500 damages against defendant, Joseph Strebler, for personal injuries resulting from an automobile collision. Defendant appealed from the ensuing judgment. This action was originally instituted by plaintiff against Joseph Strebler, Richard P. Proctor, Jr., (an alleged partner of Joseph Strebler) and James R. Hodgson. Plaintiff dismissed as to defendant Proctor and the jury found in favor of Hodgson. A cross claim for damages was filed by Joseph Strebler against James R. Hodgson and a motion for a separate trial on the aforementioned cross claim was sustained by the trial court.

The first contention asserted by defendant is that there is no showing under the evidence submitted by plaintiff that defendant Strebler was negligent. In determining that issue, we review the evidence from a standpoint favorable to plaintiff, give her the benefit of any part of the defendant's evidence favorable to her and not contradicted by her own testimony or not contrary to her fundamental recovery theory, give her the benefit of the reasonable inferences from all the evidence, and disregard all of defendant's evidence unfavorable to plaintiff. Brantley v. Couch, Mo. App., 383 S.W.2d 307; Terminal Warehouses of St. Joseph, Inc. v. Reiners, Mo., 371 S.W.2d 311; Sperry v. Tracy, Dodge-Plymouth Co., Mo., 344 S.W.2d 108. Plaintiff sought recovery under the rear end collision doctrine requiring the jury to find in her Instruction No. 1 "that said defendant (Strebler) then and there negligently and carelessly allowed the front end of his automobile to overtake, run into and collide with the rear end of Mrs. Hays' automobile, * * * and that as a direct result of such negligence, * * * the plaintiff, * * * was injured * * *."

Plaintiff was employed by Lammert's Furniture Company in Clayton, Missouri, as an interior decorator and saleswoman and had been so employed for 18 years. On the morning of May 6, 1959, about nine A.M. she left her home and was going to her employment in Clayton. Just prior to the accident she drove north on Big Bend Road to Northmoor intending to go to Big Bend and Forsyth where she would have made a left turn, Forsyth being approximately one block north of Northmoor. Big Bend is four lanes in width and there were no cars parked on Big Bend at the time she was driving north. The entire four lanes were available for moving traffic. She was traveling in the left lane for northbound traffic, which is the lane next to the center line of the street. She remained in that lane all the way to Northmoor and as she approached Northmoor there was a car standing in the same lane waiting to make a left turn. She stopped behind this car. As she started to make her stop, she looked in the rearview mirror of her car and saw another car coming in the same lane she occupied, which she later learned was Strebler's car. She also saw Hodgson's car in the right hand (curb) lane. When she came to a full stop she again looked in the rearview mirror and saw defendant's (Strebler's) car coming and said she "knew I was going to be hit. * * * because he was coming without looking." She said defendant's car was "practically upon me" at that time. She then braced herself against the wheel. She then felt the collision, stating that "it was from the rear." The car in front of her had pulled away and turned left just before the collision. There seemed to be some confusion in her testi-

mony as to how many impacts she felt, but she described the movement of her body "well, I went forward, backward, forward and backward and forward. * * * I know I went forward and backward three times." Her forehead struck the steering wheel and her car was moved forward a car length. Prior to the collision she heard no warning sound of any kind and did not hear the "screech" of any brakes behind her. The force of the collision pushed her car into the lane to her left which would be a southbound lane. She was unable to get out of her car immediately because she blacked out momentarily and when she came to someone was standing at her car window. It was Mr. Strebler, the defendant. When she got out of her car she observed Hodgson's car behind defendant's car. She observed some damage to the left front fender of Hodgson's car, stating it was dented. The front end of defendant's car was damaged seriously and the damage to her car was to the rear bumpers and to the trunk. Her car was not drivable after the collision. She was placed in Mr. Hodgson's car and taken to her home by Mr. Hodgson and the defendant.

Defendant, Strebler, called as a witness by plaintiff, said he was driving 20 to 25 miles per hour. He did not recall following plaintiff's car, stating "I had a lot of other things on my mind." He pulled up behind plaintiff's car and stopped 3 to 7 feet behind it. He could not recall if all of his car was in the lane occupied by plaintiff's car. He said he was stopped "a few seconds; maybe a minute," when he heard a skidding of tires after which his car was struck in the rear by Hodgson's car. The force of the collision moved his car forward into collision with the rear of plaintiff's car causing plaintiff's car to move forward. He said the back end of plaintiff's car "was caved in" and the front and rear of his car were damaged. Defendant's car had to be towed from the scene of the accident. He said the left front fender of Hodgson's car was damaged and the left door could not be opened. He went with plaintiff to

her home in Hodgson's car. He denied that he swerved to the right into the curb lane in front of Hodgson's car. He said that the skid marks of Hodgson's car measured 36 feet.

James Hodgson, called as a witness by plaintiff, testified he was driving north on Big Bend in the curb lane and at some place within the block south of Northmoor, defendant, Strebler, passed him driving about 25 miles per hour. The first knowledge he had there was going to be a collision was when defendant Strebler hit his brakes and witness heard the brakes "squealing." Hodgson said that he then hit his brakes and after skidding 33 feet hit Strebler's car at the right rear fender fin. Defendant Strebler's car was not pushed forward as a result of that impact. Hodgson said the only damage to Strebler's car was a nick in the chrome strip that protects the right rear fin. He said that both cars were stopped at the point of impact and that the damage to his car was a slight scratch above the left headlight rim. He said the impact was slight and did not cause Strebler's car to move forward and hit plaintiff's car. He heard a collision a split second before he contacted Strebler's car. He did not see plaintiff's car before the collision and did not know whether it was stopped in a position where it had a right to be. Hodgson said the skid marks of Strebler's car measured 36 feet. He said he took plaintiff to her home in his car. Strebler accompanied them.

 It is undisputed that the front end of the car of defendant Strebler collided with the rear end of plaintiff's car. This is shown in the testimony of plaintiff and defendant and may be inferred from the testimony of Hodgson who heard a collision a split second before he made contact with Strebler's car. Giving to plaintiff, as we must, the benefit of all evidence favorable to her and not contradicted by her own evidence and not contrary to her theory of recovery under the rear end collision doctrine, we find the evidence suffi-

cient to support a finding by the jury that defendant Strebler was negligent. We said in the case of Doggendorf v. St. Louis Public Service Co., Mo.App., 333 S.W.2d 302, 1. c. 305; "The present concept of the rear-end collision doctrine was recognized in Jones v. Central States Oil Co., supra [350 Mo. 91, 164 S.W.2d 914]. It has been defined as '* * * the doctrine or rule of law which recognizes that if one person has his vehicle in a portion of the highway where he should have it or is entitled to have it in view of the course in which he is proceeding, and some other person traveling behind him in the same direction overtakes him and permits his vehicle to run into the rear of the one ahead, the proof of a collision under such circumstances makes out a prima facie case of specific negligence against such other person in charge of the overtaking vehicle.'" The above quotation was taken from our case of Hughes v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 360, 1.c. 362. The evidence clearly demonstrates that plaintiff was in a portion of the highway where she was entitled to be and that defendant Strebler was traveling behind her in the same direction and in the same lane of traffic and overtook her and permitted his vehicle to run into the rear of plaintiff's automobile ahead of him. As the cases hold, under such circumstances a prima facie case of specific negligence has been made against defendant Strebler, the person in charge of the overtaking vehicle. Plaintiff's testimony shows that she was stopped in a lane where she was entitled to be stopped and that she saw defendant Strebler's car behind her and approaching her and traveling in the same direction as she was and that said defendant's car ran into and collided with the rear end of her car. In some respect the testimony of Hodgson confirms the fact that a collision took place between plaintiff's car and the car of defendant Strebler when Hodgson testified that he heard a collision a split second before he came into contact with Strebler's car. This first contention asserted by defendant must be denied.

During the voir dire examination of the jurors plaintiff's attorney informed the court, out of the hearing of the jurors, that he wanted to ask counsel for defendants "if any company of insurance is not interested in the outcome of this case." Counsel for defendant Strebler answered that his client was insured with Missouri Union Insurance Company and said that said company is now out of business and has instructed his client to look after his own interests and that he was representing the defendant and not the insurance company. Thereafter, plaintiff's attorney asked the court for permission to ask the jury one general question relating to the fact of whether or not any of them or members of their families, either worked for or did business with or had a financial interest in the Missouri Union Insurance Company. Thereupon, defendant Strebler's attorney objected to asking the question, whereupon, plaintiff's counsel said, "We might be able to get something out of the assets of this thing." The trial court overruled the objection, stating that there was nothing to show that the Missouri Union Insurance Company was "officially, legally," out of business and without assets. Thereafter, plaintiff's counsel asked the jury if any of the members of the jury panel or any of the immediate members of their families or people close to them either worked for or did business with or had a financial interest in the Missouri Union Insurance Company. The record indicates no one answered in the affirmative. No motion to discharge the panel was made by said defendant and there was no other mention during the trial of this insurance company by the plaintiff. Said defendant now contends that permission to plaintiff to ask the question objected to by said defendant constitutes prejudicial error. The prevailing rule of law is that permission to ask the question of the jury concerning an insurance company that may be interested in the result of the trial must be left to the sound discretion of the trial court and only where a manifest abuse of discretion appears

should this court interfere. McCaffery v. St. Louis Public Service Co., 363 Mo. 545, 252 S.W.2d 361; Davidson v. Rodgers, Mo., 258 S.W.2d 648; Gray v. Williams, Mo. App., 289 S.W.2d 463. We said in the case of Gray v. Williams, supra, 1.c. 467: "This principle rests on the proposition, at least in part, that the trial court is in an advantageous position to determine whether counsel who has introduced insurance into the case was motivated by good or bad faith in doing so. It has in effect been said, again and again, that unless the fact that defendant was insured was purposefully or in bad faith injected into the case, the action of the trial court in approving the procedure will not be disturbed." As pointed out by plaintiff in her brief, it was admitted by the attorney for defendant Strebler that he was insured with the Missouri Union Insurance Company. Whether or not that company at the time of trial was in financial difficulty was not before the court, except by statement of defendant's counsel and, therefore, was not determinative of the propriety of a proper inquiry of the jurors as to their interests in such company. As indicated by the trial court there was nothing to show officially that said insurance company was liquidated or that there were no assets of the insurance company available to pay claims and judgments against its insureds. Even if the insurance company was in financial difficulty, a juror who may be a stockholder, would have a financial interest in the remaining assets. We find nothing in the record indicating bad faith on the part of plaintiff's counsel in asking the question. We do not think the said defendant was prejudiced by reason of said question on the voir dire examination of the jurors and find no abuse of discretion on the part of the trial court in this connection. Defendant's contention is denied.

◾ The next point relied on by defendant is stated as follows: "Plaintiff's attorney, in his opening statement, made certain prejudicial remarks concerning this defendant and the court erred in failing to order a mistrial at that time, at the request of this defendant." The portion of defendant's brief devoted to argument on this alleged point is limited to a virtual restatement of the language used when stating his point and merely refers us to the transcript. The point as stated fails to show what statement of plaintiff's attorney, considered prejudicial by defendant, was erroneously ruled on by the court; nor does it show why the court's action, which defendant seeks to have reviewed by this court, is erroneous. This point does not comply with Civil Rule 83.05(a) (3), V.A.M.R.

◾ Another point relied on by defendant is stated as follows: "Defendant Strebler was denied a fair trial because of the manifest hostility of the Court throughout the trial to the Defendant Strebler and his attorney." Under this point we are then referred to "Transcript, Pages 15 through 144" for proof of the alleged hostility. This point as stated is subject to the same criticism as the last point we referred to and does not comply with Civil Rule 83.05(a) (3). However, we add, that our examination of the transcript for other purposes connected with this appeal does not demonstrate any hostility upon the part of the court toward the defendant Strebler or his attorney.

◾ Hodgson, as heretofore pointed out, was a defendant in the trial below. In the course of the trial below the court admitted into evidence Hodgson's Exhibits A, B, C and D, and permitted testimony concerning these exhibits. Defendant Strebler contends that the trial court erred in such admission and in permitting such testimony. In the cross-examination of defendant Strebler by the attorney for Hodgson, it was disclosed that the Buick automobile driven by Strebler was owned by Leroy Winkler. At Strebler's direction, the Buick automoblie owned by Winkler and driven by Strebler at the time of the accident, was towed to the "Bob Auffenberg Buick, Inc." to be repaired. In the course of Strebler's cross-examination by the attorney for Hodgson, his attention

was called to copies of an estimate (Exhibit A) and a bill of repairs (Exhibit B) prepared by Bob Auffenberg Buick, Inc. Counsel for defendant Strebler objected to the use of these exhibits because they were copies and not originals. Exhibit B showed the parts of the car that were repaired. Because of Strebler's objection to the use of the copies Hodgson's attorney produced as a witness Hadley Luebke, who was employed by the Protective Casualty Insurance Company. This witness produced Hodgson's Exhibits C and D which were the originals of Exhibits A and B. He said that his employer had custody of these original exhibits because it was called upon to pay a claim for damages to the automobile driven by Strebler, pointing out that his employer carried the collision insurance on the Buick automobile. Thereafter, Robert Auffenberg, who was the former owner of the Bob Auffenberg Buick, Inc. and out of business at the time of the trial, and Michael J. Callahan, a former employee of said Buick agency, identified Exhibits A, B, C and D as copies and originals of the estimates and bills for the repairs done on the automobile belonging to Leroy Winkler. Callahan said the repair bill indicated heavy front end damage and that the only damage in the rear of the car was to the rear quarter peak molding, which he said extends from the top of the right fin down to the beginning of the trunk molding, which was about fifteen inches in length. That was the only item shown as having been replaced or repaired on the rear of the Buick automobile. Defendant Strebler has made many complaints about the introduction of these exhibits and the testimony concerning them. It was material to the issues presented in the case and to Hodgson's defense to show that the heavy damage was done to the front end of the car driven by Strebler and only slight damage to the rear of said car. This tended to support Hodgson's testimony that Strebler struck plaintiff's car first, before Hodgson came in contact with Strebler's car. We find no merit in any of Strebler's complaints concerning the admission of these exhibits, and the testimony

surrounding same. We point out that the use by Hodgson of Hadley Luebke, an employee of the Protective Casualty Insurance Company, was caused by Strebler's objection to the use of the copies of the estimate and repair bill and thereby forced the production of the representative of the insurance company as a witness.

■ Defendant Strebler next complains about the action of the court in sustaining a motion for separate trial of his cross-claim against Hodgson. The trial court had the right to do this under the provisions of Section 510.180, RSMo 1959, 31 V.A.M.S. Said defendant has merely restated the point in the argument portion of his brief and fails to point out how he was prejudiced or wherein the court abused its discretion. The granting of separate trials rests within the discretion of the trial court, and will not be interfered with unless it appears that the court has abused its discretion. Citizens Bank of Liberty v. Thompson, 234 Mo.App. 448, 132 S.W.2d 700 1.c. 705.

■ Defendant Strebler urges error on the part of the trial court in the giving of plaintiff's two main verdict directing instructions. He contends that his theory of the case was not set forth in these instructions, and, therefore, they were erroneous. Instructions similar in all pertinent respects to those given in the instant case were approved in Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914; and Mullendore v. Gentry, Mo.App., 377 S.W.2d 494, 495. Defendant was entitled to submit instructions based upon evidence which favored his theory of the case. If he wanted his theory of the case presented for the jury's consideration it was his duty to submit such instructions. Highfill v. Brown, Mo., 340 S.W.2d 656; Robb v. St. Louis Public Service Co., 352 Mo. 566, 178 S.W.2d 443, 444.

■ Defendant complains of the giving of Instruction No. 7 which defined the terms "negligence" and "the highest degree

of care." He cites no cases supporting his contention and we are certain he can find none because we find that the definitions given were proper and approved definitions of said terms.

In his next point, defendant complains about the court's refusal to give his Instruction A. His point is in the following language: "The Court erred in refusing to give and read to the jury Instruction 'A', offered by Defendant Strebler." This point fails to comply with Civil Rule 83.05 (a) (3) V.A.M.R. in that it fails to point out wherein the error lies and to show why it was error to refuse it in the instant case. Matta v. Welcher, Mo.App., 387 S.W.2d 265; University Bank v. Major, 229 Mo.App. 963, 969; 83 S.W.2d 924, 928 (10); LaBella v. Southwestern Bell Telephone Co., 224 Mo.App. 708, 716; 24 S.W.2d 1072, 1077 (7).

Defendant next attacks the trial court's action in giving and reading to the jury Instruction No. 8, and does so in the following language: "In that the said Instruction does not properly set forth the measure of damage, is not supported by competent evidence in this cause, permits the jury to speculate, gives the jury a roving authority to pick any amount for the plaintiff's damage without norm or qualification or limitation, and confuses and misleads the jury." This assignment of error as stated presents nothing for review. It is an abstract assertion, does not point out in what respect the Instruction is not supported by competent evidence or how or wherein it permits the jury to speculate, and does not point out in what area and in what respect the Instruction confuses and misleads the jury. Here again defendant has failed to comply with Civil Rule 83.05 (a) (3) V.A.M.R.

Our credulity is strained almost to the breaking point in answering defendant's final contention. He charges that the verdict is excessive. This charge is made in the face of evidence that tends to show plaintiff had a loss of earnings during 1959, 1960 and 1961 in an amount in excess of $2,400.00. She works on a straight commission basis. The nature of her work is such that she has to lift heavy wallpaper books, get up on ladders, and handle bolts of fabric. For sometime after the accident she did not have any grip in her hand and testified that she lost control over the use of her hand and arm. Dr. Robert M. Launch, plaintiff's medical witness, testified that she had a whiplash injury to the cervical muscles and spine. He said the accident was the cause of the whiplash injury he found in his examination on May 7, 1959. He saw plaintiff about twenty times in the four years prior to the trial and said that her complaints of pain made at the time of trial were justified and compatible with the type of injury she sustained and that she will continue to have these complaints and difficulties of which she complains for an indefinite period. Plaintiff testified that she had no headaches other than the normal headaches prior to the accident and following the accident she suffered terrific headaches. She testified that following the accident the pain in her upper back and neck was quite severe and as her neck and upper back injury subsided and tended to cause less pain, the lower part of her back continued to bother and to pain her. At the time of her testimony she said that the neck and upper back had not cleared up completely but was more comfortable than shortly after the accident but that her back continues to hurt her. She is not able to bend and move around normally and cannot lift heavy objects as easily as she could before. She is still under the doctor's care and takes four capsules a day which she describes as a cortisone derivative prescribed by her doctor. We think the evidence we have summarized concerning the injuries sustained by plaintiff and her loss of earnings demonstrates that the verdict of the jury in the sum of $2,500.00 for damages was

very modest. Defendant has cited no case which holds that this verdict is excessive.

We find no reversible error in the trial of the case below, and therefore affirm the judgment.

WOLFE, P. J., and J. MORGAN DON-ELSON, Special Judge, concur.

ANDERSON, J., not participating.