**Anne BRANTLEY, Plaintiff-Appellant-Respondent,**

**v.**

**David COUCH, Defendant-Appellant,**
**and**
**Oscar Thompson, Defendant-Respondent.**

Nos. 31522, 31523.

St. Louis Court of Appeals.

Missouri.

Oct. 20, 1964.

Motion for Rehearing or for Transfer to Supreme Court Denied
Nov. 17, 1964.

---

Hullverson, Richardson & Hullverson, Corinne Richardson, James E. Hullverson, St. Louis, for plaintiff-appellant-respondent.

Heneghan, Roberts & Cole, John J. Cole, St. Louis, for defendant-appellant.

Gray, Sommers & Jeans, James W. Jeans, St. Louis, for defendant-respondent.

DOERNER, Commissioner.

This is an action for damages for personal injuries sustained by plaintiff in a chain collision between three in-line automobiles driven by John Eftink, Oscar Thompson, and David Couch, respectively. Plaintiff sued all three drivers, but preceding the trial defendant Eftink's motion for summary judgment was sustained. The jury returned a verdict in favor of plaintiff and against both remaining defendants for $4,000, and judgment was entered in accordance therewith. Thereafter each defendant filed a motion to have the judgment set aside and to have judgment entered in his favor in accordance with his motion for a directed verdict filed at the close of all the evidence, or in the alternative, for a new trial. The court sustained the motion of defendant Thompson to set aside the judgment against him and enter judgment in his favor and for a new trial; and overruled the alternative motions of defendant Couch. Plaintiff appealed from the judgment entered in favor of defendant Thompson and from the order granting him a new trial. Defendant Couch appealed from the judgment against him, and has also attempted to appeal from the judgment in favor of defendant Thompson.

The two collisions here involved occurred on August 9, 1961, somewhere between 9:00 and 10:00 P.M., at the intersection of Gravois and Dahlia Avenues, in the City of St. Louis. At that point Gravois is six lanes wide, but because cars were parked on both sides there were only two eastbound lanes and two westbound lanes available for travel. It was or had been raining and the streets were wet. The three automobiles being driven by Eftink, Thompson, and Couch were all proceeding eastwardly on Gravois, in that order, in the lane next to the centerline. The first collision occurred when the Eftink car, which had been brought to a stop at Dahlia in obedience to a stoplight, which changed from green to amber, was struck from the rear by the Thompson car. Shortly thereafter Thompson's automobile was struck from the rear by the Couch car. Plaintiff, one of numerous passengers in the Thompson station wagon, sustained what is commonly called a whiplash injury to her neck.

With that brief statement of the evidence, to be augmented as required, we turn first to a consideration of plaintiff's appeal. As might be expected, plaintiff's initial assignment is that the court erred in sustaining defendant Thompson's motion for judgment in accordance with his motion for a directed verdict. In that connection it is important to note that the court did not sustain Thompson's after-trial motion for judgment on both of the grounds con-

tained in his motion for a directed verdict, but only on specification 2. That specification read:

> "2. That under the law and the evidence, neither the acts or the omissions of Oscar Thompson were the proximate cause of any injury to the plaintiff."

The first specification, which was *not* sustained by the court, read:

> "1. That under the law and the evidence, defendant Oscar Thompson was not negligent."

In effect, then, the court ruled that the evidence was sufficient to submit to the jury the issue of Thompson's negligence, but that the evidence was not sufficient to show that Thompson's negligence was the (or a) proximate cause of plaintiff's injury. We emphasize this aspect of the court's ruling because able and industrious counsel for plaintiff and defendant Thompson have devoted a considerable portion of their briefs to a discussion of whether or not Thompson's negligence was a proximate cause of the second collision between the Thompson and Couch automobiles. Of course, if all of the evidence established that plaintiff's injury resulted solely from the second impact, between the Thompson and Couch cars, then in order to recover against Thompson it would be necessary for plaintiff to show that Thompson's negligence was the sole, or at least a concurring, cause of the second collision and plaintiff's consequent injury. Seeley v. Hutchinson, Mo., 315 S.W.2d 821; Matthews v. Mound City Cab Co., Mo.App., 205 S.W.2d 243; See v. Kelly, Mo.App., 363 S.W.2d 213. Or if the two accidents were widely separated as to time and distance, and it was possible to identify with some definiteness the injuries suffered in each, the burden of proving in which accident an injury was sustained would be on the plaintiff. Sparks v. Ballenger, Mo., 373 S.W.2d 955.

But a different rule applies where two or more persons acting independently are guilty of consecutive acts of negligence, closely related in point of time, which cause an indivisible injury; that is, an injury which the triers of fact decide they cannot reasonably apportion among the negligent defendants. According to the weight of authority, in such a case the tort-feasors are jointly and severally liable for all of the damages. The rule is stated in 38 Amer.Jur., Negligence, Sec. 257, pp. 946, 947, as follows:

> " * * * According to the great weight of authority, where the concurrent or successive negligent acts or omissions of two or more persons, although acting independently of each other, are, in combination, the direct and proximate cause of a single injury to a third person, and it is impossible to determine in what proportion each contributed to the injury, either is responsible for the whole injury, even though his act alone might not have caused the entire injury, or the same damage might have resulted from the act of the other tort-feasor, and the injured person may at his option or election institute suit for the resulting damages against any one or more of such tort-feasors separately, or against any number or all of them jointly. The injured person is not compelled to elect between the tort-feasors in invoking a remedy to obtain compensation. * * *"

And see: Matthews v. Mound City Cab Co., Mo.App., 205 S.W.2d 243; Maddux v. Donaldson, 362 Mich. 425, 108 N.W.2d 33; Ruud v. Grimm, 252 Iowa 1266, 110 N.W.2d 321; Murphy v. Taxicabs of Louisville, Inc., Ky., 330 S.W.2d 395; Reed v. Mai, 171 Kan. 169, 231 P.2d 227; Micelli v. Hirsch, Ohio App., 83 N.E.2d 240; Restatement, Torts, Vol. 4, Sec. 879, p. 446; 65 C.J.S. Negligence § 102, pp. 639–645; Cooley, Torts, (4th Ed.), Sec. 86, pp. 279, 280; Harper and James, The Law of Torts, Sec. 10.1, p. 692; Wigmore, Joint-Tortfeasors and Severance of Damages, 17 Ill.L.R. 458; Prosser, Joint Torts and Several Liability,

25 Cal.L.R. 413. As the foregoing cases illustrate, the doctrine is particularly applicable in automobile chain collision cases.

■ All of the medical testimony was to the effect that the plaintiff sustained a single, indivisible injury, the whiplash to her neck. Doctors B. T. Forsyth and S. M. Rifkin so testified for the plaintiff, as did Dr. Henry Lattinville, who had examined plaintiff on behalf of both defendants but was called to the stand by defendant Couch alone. The evidence was sufficient to show that defendant Thompson's negligence was the proximate cause of the first collision. Assuming, as he contends, that his negligence did not contribute to cause the second collision, the precise question presented, so far as plaintiff's appeal is concerned, is whether there was sufficient evidence from which the jury could reasonably find that plaintiff's indivisible injury was the proximate result in whole or in part of the negligence of Thompson in causing the first impact. In determining that issue we review the evidence from a standpoint favorable to plaintiff, give her the benefit of any part of the defendant's evidence favorable to her and not contradicted by her own testimony or not contrary to her fundamental recovery theory, give her the benefit of the reasonable inferences from all the evidence, and disregard all of defendant's evidence unfavorable to plaintiff. Terminal Warehouses of St. Joseph, Inc. v. Reiners, Mo., 371 S.W.2d 311, Sperry v. Tracy Dodge-Plymouth Co., Mo., 344 S.W.2d 108.

■ On direct examination plaintiff testified that the time between the first impact and the second " * * * was just a matter of a second, just real short time"; that when she felt Thompson apply his brakes she looked up and saw the Eftink car less than a car length away she leaned forward a little and the impact " * * * moved me forward just a little"; that the impact was slight; that she couldn't say whether or not her head and neck were snapped by the first impact; that the second impact, was from the rear, of terrific force, and that she was thrown back in the seat; that immediately thereafter she had quite a bit of pain in her head and was dazed; and that "I can't say, (in which collision she was hurt), the other happened so fast, I can't really distinguish." On cross-examination by defendant Thompson plaintiff agreed with a prior statement taken on the day of the accident wherein she stated that she leaned forward because she knew that Thompson was going to hit the Eftink car and that she heard a crash in the back and her neck went forward. She remembered also stating that she did not think the first impact jarred her, but she insisted, "Well, I'm not disputing what I said, but it happened so fast as I told you that night that I can't distinguish between what happened when I was leaning forward and what happened when we were hit from the rear." Dr. Lattinville testified that, " * * * any forward, or sideward, or backward movement of the neck, a sudden jerking, so to speak, it can be in any direction, to the side, forward or backward, would give you sprain (of the neck)." Counsel for defendant Couch posed a hypothetical question in which the first impact was described as violent (based on a statement in Thompson's deposition). Counsel for defendant Thompson objected on the grounds that, " * * * it overlooks the element I think the most important, that when, with the first impact that this person riding in the car saw the impending contact which she described as being a fair contact, a very slight impact, and anticipating it she leaned forward, and that with the first impact there was no snapping of the neck or movement of her body other than leaning forward." "THE COURT: Include that, Doctor, now you may answer that." Based on the amended hypothesis, the Doctor was asked whether he was able to state with any degree of reasonable medical testimony which of the two impacts would cause the condition he found. His answer: "Gentlemen of the Jury, I honestly don't believe you could say which one caused it, because, certainly, I have had patients hit from the side, had head-on collisions, and all sus-

tained this injury. Now Mr. Jeans mentioned if she was braced for it and had her neck stiff, and so on, perhaps both, perhaps it was the one behind, but I honestly don't believe in my mind you could say which one caused the damage and did not both impacts cause it." While the Doctor testified on cross-examination that if an impact from the front was slight and one from the rear was severe he would tend to say the rear end impact caused more damage, he also stated that he had had cases where there had been a light impact and substantial injury. In view of the foregoing testimony we are of the opinion that the evidence was sufficient to submit to the jury the issue of whether plaintiff's single, indivisible injury was the proximate result in whole or in part of the negligence of defendant Thompson, and that the trial court therefore erred in sustaining his motion for judgment.

Plaintiff also contends that the court erred in alternatively sustaining defendant Thompson's motion for a new trial. The reason given by the court for its ruling was that it had erred in giving Instructions Nos. 1 and 7, " * * * because there is not substantial evidence in the record on which the jury could base a finding that the Plaintiff was injured in the first impact." This is, of course, the same grounds upon which the court sustained defendant Thompson's motion for judgment, and what we have heretofore stated regarding the sufficiency of the evidence is equally applicable to the court's ruling on Thompson's motion for a new trial.

 In his appeal defendant Couch contends that the court erred in sustaining defendant Thompson's alternative motions for judgment or a new trial; in giving instructions numbered 1 and 7 on behalf of plaintiff; and in refusing to give Instruction No. A offered by him. In view of what we have heretofore held the first point is now academic, but in any event defendant Couch was not aggrieved by the court's action within the meaning of Section 512.020, RSMo 1959, V.A.M.S., and had no right of

appeal therefrom. Stutte v. Brodtrick, Mo., 259 S.W.2d 820. As to Instruction No. 1, Couch's initial complaint is that the instruction failed to hypothesize sufficient facts from which the jury could find negligence on his part. In brief, the facts hypothesized were that as the Eftink, Thompson and Couch automobiles approached the intersection the traffic light changed from green to amber, and that Eftink reduced his speed and stopped; that Thompson, then 100 feet to the rear of Eftink, traveling at 25 miles an hour, did not apply his brakes until he was within 25 feet of Eftink, when he suddenly reduced his speed but struck the rear end of Eftink and came to a sudden stop; that almost immediately thereafter Couch collided with the rear end of Thompson; and that Couch failed to exercise the highest degree of care and was negligent in that he suffered and permitted his car to strike that of Thompson's. The parties are in agreement that the submission as to Couch was under the rear-end collision doctrine. But defendant contends that the instruction was defective in that facts should have been hypothesized from which the jury could have found that the Thompson automobile, which came to a sudden stop, was at rest long enough for Couch, in the exercise of the highest degree of care, to have stopped his car and avoided striking the rear of Thompson's vehicle, citing Doggendorf v. St. Louis Public Service Co., Mo.App., 333 S.W.2d 302 and Thaller v. Skinner & Kennedy Co., Mo.App., 339 S.W.2d 487. The instruction reviewed in the latter case was not based on the rear-end collision doctrine. And the factual situation presented in the instant appeal is substantially different from that which prevailed in Doggendorf v. St. Louis Public Service Co., supra. Couch admitted that he saw the traffic light change from green to amber and observed Eftink's automobile come to a gradual stop. While the record does not show Couch's precise distance from the Eftink car at that time the evidence indicates that it was in excess of 200 feet. Couch stated that the Thompson car was ahead of him in the same lane in which he was traveling, and

that there was another car beside him in the lane to his right. When he saw the Eftink vehicle stop he knew, therefore, that he would be required to come to a stop before he reached Thompson's car. The mere fact that Thompson's car struck Eftink's vehicle and came to a sudden stop was immaterial so far as Couch's negligence was concerned. For, knowing when Eftink's car stopped that he would have to come to a halt, he nevertheless took no action until he saw Thompson's stoplights go on when Thompson was only 25 feet from Eftink's automobile. It was plaintiff's theory, supported by the foregoing evidence, that after Eftink stopped Couch overtook Thompson to such an extent that the second rear-end collision occurred " * * * immediately thereafter * * *" the first, and her factual theory was submitted to the jury in those words. Plaintiff's evidence and her submission accorded with the rear-end collision doctrine, Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914; Witherspoon v. Guttierez, Mo., 327 S.W.2d 874; McVey v. St. Louis Public Service Co., Mo., 336 S.W.2d 524, and we find no merit in Couch's complaint.

■ It is next contended that Instruction No. 1 was erroneous in that it did not submit to the jury the issue of whether plaintiff suffered her injuries solely from the first impact. The answer to that argument is that plaintiff did not introduce any evidence which would have supported such a submission. There was testimony, by Dr. Rifkin, that in his opinion her injuries were received as a result of the *second* collision; there was testimony, by plaintiff, that she was unable to state in which collision she was injured; and there was testimony by defendant's witness, Dr. Lattinville, that he could not say with reasonable medical certainty whether the first, or the second, or both caused the injuries. But there was no evidence that plaintiff's injuries were suffered solely as a result of the first impact.

■ Defendant's final criticism of Instruction No. 1 is that it was inconsistent, confusing and misleading regarding the liability of Thompson and Couch. The instruction informed the jury that if it found that Thompson's negligence was the sole cause of the second collision its verdict should be against him alone; that if Couch's negligence was the sole cause, its verdict should be against him alone; and that if both were negligent in the particulars specified as to each, plaintiff was entitled to a verdict against both. We fail to see wherein the instruction was inconsistent, confusing, or misleading.

Couch next complains that Instruction No. 7, on damages, was erroneous in that, as in Instruction No. 1, the issue of whether plaintiff suffered her injuries solely as the result of the first impact was not submitted to the jury. What we have heretofore said regarding that feature of Instruction No. 1 is equally applicable to the same criticism of Instruction No. 7.

■■ Defendant's final point is that the court erred in refusing to give his Instruction No. A, based on the emergency doctrine. As stated in Jones v. Hughey, Mo., 283 S.W.2d 550, 552:

"The emergency doctrine is not a defense and a defendant is not automatically exonerated because an emergency existed. The doctrine is a principle of law which means the fact that action was taken in an emergency is a factor that may be considered in determining the reasonableness of the action. Rohde v. St. Louis Public Service Co., Mo.Sup., 249 S.W.2d 417. But the emergency doctrine has no application and may not be asserted if the emergency arises wholly or partially from the negligence of the one who seeks to invoke the doctrine. Restatement, Torts, Vol. II, § 296; Teague v. Plaza Express Co., 354 Mo. 582, 190 S.W.2d 254; Rohde v. St. Louis Public Service Co., supra."

The emergency hypothesized in defendant's refused instruction was the abrupt stopping of Thompson's car, without adequate warning, when it struck Eftink's car and stopped, partly in Couch's lane and partly in the one to his right. But as we have heretofore pointed out, according to Couch's own testimony he saw the Eftink automobile come to a stop in his lane at Dahlia when the stoplight changed from green to amber. At that time he was at least 200 feet away, traveling at 25 miles per hour, with other eastbound traffic in the lane to his right and westbound traffic in the westbound lane to his left. He knew or should have known that under normal circumstances Thompson's car, preceding his, would come to a stop short of Eftink's car. He likewise knew or should have known that he would have to bring his car to a stop short of Thompson's car. He needed no further warning of his need to stop. The only thing he didn't know was that Thompson would proceed farther forward than he should have gone, and, in so doing, would strike Eftink's car. Had Thompson made a normal stop a few feet to the rear of Eftink it could not validly be contended that Couch was confronted with a sudden emergency. Similarly, the mere fact that Thompson went *farther* than he should have, and struck the Eftink car, did not present Couch with a sudden emergency. In short, Couch's own testimony showed that no sudden emergency arose, and for that reason Instruction No. A was properly refused. There are other deficiencies which would also justify the court's refusal, but the foregoing will suffice.

It follows from what has been said that the judgment rendered by the court in favor of defendant Thompson, and the alternative order sustaining his motion for a new trial, should be reversed and the cause remanded with directions to reinstate the judgment in favor of plaintiff and against defendant Thompson; and that as to defendant Couch the judgment rendered against him should be affirmed. The Commissioner so recommends.

PER CURIAM..

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment in favor of defendant Thompson and alternative order sustaining motion for new trial is reversed and cause remanded with directions to reinstate judgment in favor of plaintiff and against defendant Thompson; that judgment as to defendant Couch be affirmed.

RUDDY, P. J., WOLFE, J., and JAMES D. CLEMENS, Special Judge, concur.

ANDERSON, J., not participating.