**VETERANS LINOLEUM & RUG, INC.,**
**Plaintiff-Respondent,**

v.

**Bernard H. TUREEN, Defendant-Appellant.**

No. 32949.

St. Louis Court of Appeals.

Missouri.

Sept. 17, 1968.

Blumenfeld, Kalishman, Marx & Tureen, Phillip J. Paster, St. Louis, for appellant.

Slonim & Ross, Richard L. Ross, Clayton, for respondent.

TOWNSEND, Commissioner.

From a nine-man verdict for $4,127.50 in favor of plaintiff and judgment thereon defendant prosecutes this appeal.

Plaintiff declared on "a certain written contract . . . to sell, deliver and install linoleum to the defendant at an agreed price of Thirty-Three cents (33¢) per square foot" and prayed judgment for $4744 plus interest. At the trial plaintiff introduced the following document signed by the parties hereto: "Purchaser *Broadview Hotel.* No. and Street *5th St. & Broadway.* City and State *East St. Louis, Ill.* Veterans Linoleum & Rug, Inc., the

Contractor, agrees to furnish all materials and labor necessary for installation of the improvements described herein according to the following specifications on/in building located at No. . . . Street . . . City . . . *For supplying & laying ⅛ Vinyl agatine tiles sec. on third floor designated by Mr. Turine* [sic], *also hallways where designated at the above Hotel. Material used & labor at 33¢ per sq. ft. To be paid at completion of job. fixing of floors to be done by Hotel management* * * *. Contractor will do all said work in a good and workmanlike manner and in strict accordance with the ordinances, rules and requirements of the City, Town, or Village, wherein the above mentioned property is located." (We italicize the hand-written portions of the above document). At the trial only two witnesses testified—Mr. Rothman, president of the plaintiff, and Mr. Tureen, the defendant.

The petition alleged, inter alia: "(3) In accordance with said contract, the plaintiff sold and delivered Sixteen Thousand Eight Hundred (16,800) square feet of linoleum to the defendant" and "(5) The total contract price, as agreed by the parties herein, was Five Thousand Five Hundred Forty-Four Dollars ($5,544.00) * * *."

■ We review the evidence from a standpoint favorable to plaintiff, give it the benefit of any part of the defendant's evidence favorable to it and not contradicted by its own testimony or not contrary to its fundamental recovery theory, give it the benefit of the reasonable inferences from all the evidence, and disregard all of defendant's evidence unfavorable to plaintiff. Terminal Warehouses of St. Joseph, Inc. v. Reiners, Mo., 371 S.W.2d 311; Sperry v. Tracy Dodge-Plymouth Co., Mo., 344 S.W.2d 108; Brantley v. Couch, Mo.App., 383 S.W.2d 307.

Following such established principles of review, we find that the jury might well have found the following facts: Defendant instructed plaintiff to lay tile in all the rooms and corridors of the third floor. Plaintiff's mechanic measured such areas and he specified to plaintiff that approximately 300 cases of tile would be needed "to start off with". In anticipation of performance of the tile-laying job plaintiff caused 300 cases of tile, amounting to 16,800 square feet, together with appropriate amounts of paste, to be delivered to the building in question; there the tile was stored in a basement room to which defendant's maintenance man had the key. Thereafter plaintiff's workmen laid the tile in eleven rooms, requiring the use of forty cases. At this stage defendant ordered the tile-laying stopped and thereafter gave no explanation of why he wanted the work stopped. Defendant did not express any dissatisfaction with the floors. Subsequently Mr. Rothman and the defendant met for the purpose of considering the amount which was owed to plaintiff for tile actually installed; a measurement of such installed areas was made by a representative of defendant who reported that the amount due therefor at the contract rate was $910.30, a sum thereupon paid by defendant by check. Defendant then told Mr. Rothman that he could pick up the balance of his tile and paste. Over the next two months plaintiff sent its employees to the hotel on numerous occasions —"over twenty times"—to pick up the tile which it had not installed and upon each occasion its efforts were fruitless owing to the absence of defendant's maintenance man who had the key to the area where the tile was stored. Nor was defendant present upon such occasions. No portion of the tile which was not installed by plaintiff has ever been returned to plaintiff. Mr. Rothman made an inspection of certain floors of the hotel and there found that at least fifteen rooms other than those installed by plaintiff's workmen had been floored with the tile which plaintiff had stored on the premises; Mr. Rothman identified such tile by the design which was produced only by plaintiff's supplier. When Mr. Rothman and defendant negotiated the matter of installing the tile, Mr. Rothman told defendant that plaintiff's supply of tile (seven carloads) had been acquired from

B. F. Goodrich Company as a "close-out" of the latter's inventory and that it was second quality. Plaintiff's labor cost of laying tile was five cents per square foot.

Under questioning by plaintiff's counsel Mr. Rothman developed the method by which he arrived at the amount for which he said plaintiff was suing, namely, $3892.-80. Assuming that only forty cases of tile had been laid by plaintiff, Mr. Rothman charged defendant with the balance of the tile which had been stored in the hotel basement, i. e., 260 cases. Each case contained fifty-six square feet and therefore he charged defendant with 14,560 square feet. This quantity multiplied by 33 minus 5 cents, or 28¢, yields a product of $4076.80. Mr. Rothman had previously computed the amount owed plaintiff for tile actually installed by plaintiff, i. e., forty cases, at $726.[1] Adding the latter sum to $4076.80, he arrived at a total of $4802.80; giving defendant credit for $910.30 admittedly paid, Mr. Rothman asserts that the principal sum owing is $3892.50, no part of which has been paid. The net result of plaintiff's computation is to charge defendant for the installation of forty cases at the contract installation rate of 33¢ per square foot and to charge defendant for 260 cases at the contract installation rate reduced by the amount of the labor cost saved to plaintiff in not having to do the actual installation of the 260 cases.

■ The indefiniteness and uncertainty of the agreement as signed by the parties was cured when defendant designated the entire third floor including hallways as the area to be tiled. Thereby the defendant gave substance to his promise to pay and removed any doubt of whether his promise in the written agreement constituted sufficient consideration for the promise of the plaintiff. At that moment the agreement of the parties consisted of two simple promises, that of the plaintiff to tile the areas designated by defendant and that of the defendant to pay at the named rate for tiling the designated areas.

■ In his first two points appellant maintains that the trial court erred in overruling appellant's motion for a directed verdict at the close of plaintiff's evidence. However after the overruling of the motion appellant proceeded to introduce his own evidence and under such circumstances it has been repeatedly held that the appellant thereby waives any complaint that the trial court erred in that respect. Appelhans v. Goldman, Mo., 349 S.W.2d 204; Keithley v. St. Louis Public Service Co., Mo.App., 379 S.W.2d 149.

■ At the close of all evidence the defendant moved for a directed verdict on the ground that the contract shown in evidence was in complete variance from the contract pleaded. The motion was denied; defendant assigns such refusal as error in his motion for new trial. While thus preserving the point for review, defendant fails to carry the point forward into his brief. Thus there was a failure to comply with Rule 83.05, V.A.M.R. and this assignment is not before us. In this situation we must consider the case on the basis of the contract actually proven at the trial. We proceed with defendant's assignments of error absent the issue of variance.

Appellant assigns as error the giving of plaintiff's verdict-directing instruction which hypothesized

"First, plaintiff contracted with defendant for the supplying and laying of the tile mentioned in evidence,

Second, plaintiff delivered the tile mentioned in evidence and laid part thereof,

Third, defendant stopped plaintiff from laying the remainder of the tile,

1. In making this computation the witness was obviously in error, for forty cases of tile total 2240 square feet; at the contract rate of 33¢ per square foot the amount due therefor would be $739.20.

Fourth, defendant made only partial payment of the price mentioned in evidence and failed to pay the balance due."

This complaint relates to so many aspects of the case that it is necessary to proceed with an analysis of the case as exposed by the evidence recited above.

In many respects, both in its petition and otherwise, the plaintiff treats the agreement with defendant-appellant as a contract for the sale of goods—plus of course the commitment to lay tile. The contract placed in evidence was not a contract for the sale of goods; it was at most a contract for the improvement of real estate. The conduct of the parties negatived any idea that they entered into a contract of sale. The contract did not require plaintiff to store tile on defendant's premises and such storage under the circumstances shown is properly to be regarded as mere preparation by plaintiff to perform its promise, viz., to install tile. When plaintiff's tile was hauled to defendant's premises it was not tendered *to defendant* as a performance under the contract; defendant did nothing to indicate that he accepted that tile as such performance or that from that moment forward he regarded himself as the owner. Title to the tile remained in plaintiff. Nothing said or done limited plaintiff, in performing the agreement, to the use of the very tile which had been so stored. Plaintiff's duty under the contract was not divided into two parts, one to supply tile and the other to lay it; plaintiff's duty was indivisible, and that duty was to install tile. Defendant did not contract to pay a certain sum for tile and another sum for the laying of it; defendant's commitment was to pay one certain sum for a completed job.

The plaintiff proceeded with the work of tiling until stopped in that performance by defendant. Defendant gave plaintiff no reason for stopping the work. When defendant ordered that there be no further laying of tile, he thereby prevented further performance by plaintiff of plaintiff's promise, inasmuch as defendant was in possession of the premises.

It is elementary law that where a contract consists of a simple promise on each side and there are no stated conditions precedent, the duty of performing the one promise which can be had in an instant of time (payment) is impliedly conditional upon substantial performance of the other promise which requires a considerable period of time. Here there is no evidence which would justify any conclusion other than the one that plaintiff had not approached substantial performance of that which it promised to do. Hence at this stage there was no factual satisfaction of the implied condition precedent to defendant's duty to perform his promise to pay. However, "if a promisor prevents or hinders the occurrence of a condition, or the performance of a return promise, and the condition would have occurred or the performance of the return promise been rendered except for such prevention or hindrance, the condition is excused * * *." Restatement, Contracts, Sec. 295.

Likewise, "prevention or hindrance by a party to a contract of any occurrence or performance requisite under the contract for the creation or continuance of a right in favor of the other party, or the discharge of a duty by him, is a breach of contract," with certain exceptions not relevant here. Restatement, Contracts, Section 315. In the present case defendant at no time withdrew his order to stop performance, and upon inquiry gave plaintiff no reason for stopping the work. We entertain no doubt that defendant's breach by prevention of performance was a material breach. As such it was a total breach (Restatement, Contracts, Section 317) which gave rise to an immediate right of action for damages. Ehrlich v. Aetna Life Insurance Co., 88 Mo. 249; McCullough v. Baker, 47 Mo. 401; Chapman v. Kansas City, C. and S. Ry. Co., 146 Mo. 481, 48 S.W. 646; Ott v. Moore, Mo.App., 20

S.W.2d 166; Smith v. Keith & Perry Coal Co., 36 Mo.App. 567.

■ Adverting to plaintiff's verdict-directing instruction, we find that defendant in his motion for new trial assigned as error that the instruction "imposed upon the jury the duty of construing the agreement between the parties, which duty was in the exclusive province of the court" and "because such instruction gave the jury a roving commission to determine the agreement between the parties, when the agreement between the parties was embodied in a written document which was admitted into evidence" and further that the instruction *"allowed* the jury to find an agreement between the parties that defendant would pay plaintiff for all tile delivered but not used by the plaintiff to lay floors, although there is no evidence of such agreement and although the contract sued on contains no such provision." Defendant's assignments are in general carried forward in Point V of his brief. Plaintiff asserts a violation of Rule 83.05 in defendant's failure to set forth the challenged instruction in full in the argument part of his brief. We think that Rule 83.05 has been satisfied since "the point can be readily discerned and understood from a reading of only the questioned portion of the instruction"; in such event it is "sufficient to set forth only the latter."

We assume that when the words "the tile mentioned in evidence" were used in the first clause of plaintiff's verdict-directing instruction it was intended thereby to refer to the tile transported by plaintiff to defendant's premises. If so, this was an inadequate statement of the scope of plaintiff's commitment. However the term so used may not have been confusing in view of the fact that the same term is used in the second clause of the instruction and it is there clear that "the tile mentioned in evidence" refers to the tile transported and stored on defendant's premises; a jury could readily understand that the meaning was the same in each of the two clauses.

■ The hypothesis that the defendant failed to pay the balance due required the jury to find that there was some principal amount due, as to which defendant had made only a partial payment. Since the instruction relates to the contract between the parties, that assumption that there was some principal amount due involves the further assumption that that principal amount became due under the terms of the contract. That assumption casts upon the jury the burden of determining whether such principal amount became due under the terms of the contract. Such a determination obviously required a construction of the contract by the jury. Not only was there error in allocating to the jury the construction of the contract but the attempt to do so was couched in terms of utter indefiniteness as to the principal amount, only a part of which had been paid. Here the principal amount is expressed in terms of "the price mentioned in the evidence". To what is the jury referred when those words are used? There was no overall contract price for tiling the area to be designated by the defendant for tiling. The maximum amount that could have become due under the contract terms was indefinite. The only monetary reference is to 33¢ per square foot for the area tiled. The net result is that the jury was confronted with a term without established meaning and it was not instructed in other terms which would have established the criteria by which to determine what was meant by price. It was thus given a roving commission to determine the total price and hence the principal amount due under the contract.

The verdict of the jury shows the construction which it placed upon the contract. Acting under the instruction hypothesizing "the price mentioned in the evidence" it followed precisely the plaintiff's computation of the amount of its claim, namely, 33¢ per square foot for the area covered by laid tile plus 28¢ per square foot for 260 cases of unlaid tile, all diminished by the lump sum payment of $910.30. Thus

it construed the contract terms as entitling plaintiff to 28¢ per square foot for unlaid tile. There is nothing in the contract which could lead to the conclusion that defendant agreed to pay a price of twenty eight cents per square foot for tile delivered to the premises, all which serves to point up emphatically that the instruction left the determination of the total amount due to the generally uncontrolled conjecture and speculation of the jury.[2] Not only was the matter of construction outside the province of the jury; the contract and the other evidence could have afforded no justification for a court to construe the contract so as to put defendant under the duty of paying 28¢ per square foot for unlaid tile.

■■ On the evidence adduced defendant was guilty of a breach of contract by prevention of plaintiff's performance. Under such circumstances plaintiff is entitled to "compensatory damages * * * for the net amount of the losses caused and gains prevented by the defendant's breach, in excess of savings made possible." Restatement, Contracts, Section 329. Where the contract is one for construction plaintiff builder is entitled to "the entire contract price and compensation for unavoidable special harm that the defendant had reason to foresee when the contract was made, less installments already paid and the cost of completion that the builder can reasonably save by not completing the work." Restatement, Contracts, Section 346. In this Court, it has been held that the essential elements of such a plaintiff's case are "the making of the contract, its breach, and his damage, based upon the contract price and plaintiff's ability to perform for a lesser amount." Sides v. Contemporary Homes, Inc., Mo.App., 311 S.W. 2d 117, 122. Accordingly, a verdict-direct-

ing instruction was held to be reversibly erroneous where it did not require a finding that plaintiff had been damaged, "i. e., that the contract price exceeded the plaintiff's anticipated cost of completing the contract." Sides v. Contemporary Homes, Inc., supra, at 122. Such a defect is not cured even though followed by a defendant's instruction properly stating the measure of damages. Smalley v. Wunderlich, Mo.App., 62 S.W.2d 919.

In the present case we find nothing in the verdict-directing instruction which requires a finding that the total contract price exceeded the amount of what would have been plaintiff's cost of performing the whole of the contract if plaintiff had been permitted to complete. Certainly the fourth clause of plaintiff's instruction had no relation to plaintiff's anticipated cost of complete performance. There was no equivalence between the hypothesis which was held to be fatally absent in the Sides case and that which was hypothesized here in the fourth clause of plaintiff's instruction. Here the only item of plaintiff's cost cast up by the evidence was the labor cost of 5¢ per square foot. Wholly lacking was any evidence of the value of the tile or of the paste with which they would have been laid. Plaintiff advanced no information regarding the cost to him of the tile, if that be deemed material. In that state of the evidence, an instruction in the exact terms specified in the Sides case—requiring a finding that the contract price exceeded plaintiff's anticipated cost of complete performance—would have been erroneous because based on assumed facts not in evidence.[3]

■ The evidence tends clearly to show a conversion by defendant of 260 cases of tile. However plaintiff did not plead a

2. It may not be wholly irrelevant to observe that 28¢ could have measured plaintiff's damages arising from breach of contract only if the unlaid tile had had no value; any invitation to indulge in the latter assumption would have to be rejected.

3. We deal here only with the verdict-directing instruction. Defendant's contention as set forth in his motion for new trial that plaintiff's measure of damages instruction was erroneous is not before us because not carried forward into the brief.

conversion; nor was the case tried on that basis. We do not conceive the conversion to be a consequence of defendant's breach of contract; it did not flow directly from the breach. The inference to be drawn from the evidence is that there was some period of time intervening between the breach and the conversion. Proximity of the tile merely gave the opportunity for conversion. In addition there was no evidence of the value of the tile at any time. Consequently in this action for breach of contract alone the fact of conversion is without significance.

As this case must be remanded for new trial, it would serve no useful purpose to review other assignments of error.

The judgment is reversed and the cause remanded to the Circuit Court.

PER CURIAM:

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, the judgment is reversed and the cause remanded to the Circuit Court.

ANDERSON, P. J. RUDDY, J., and JAMES H. KEET, Jr., Special Judge, concur.