**Charles V. GREEN, Plaintiff-Respondent,**

v.

**The STANDARD OF AMERICA LIFE IN-SURANCE COMPANY, Defend-ant-Appellant.**

**No. 33749.**

St. Louis Court of Appeals, Missouri.

Dec. 22, 1970.

———◆———

Hocker, Goodwin, Gibbons & Fehlig, St. Louis, for defendant-appellant.

Bialson, Corrigan, Murray & Ebert, St. Louis, for plaintiff-respondent.

WEIER, Commissioner.

Plaintiff, an insurance salesman, sued his former employer, defendant insurance company, for unpaid commissions. Verdict and judgment were for plaintiff awarding him $5,800 with interest, which, after remittitur, amounted to $874.75 or a total of $6,674.75. Defendant appealed, contending that the trial court should have sustained its motion for directed verdict at the close of all the evidence because plaintiff failed to make a submissible case.

Since the jury found for plaintiff, in determining the issue of submissibility, we are required to review the evidence from a standpoint favorable to plaintiff, give him the benefit of any part of defendant's evidence favorable to plaintiff and not contradicted by his own testimony or not contrary to his fundamental recovery theory, accord plaintiff the benefit of all inferences which may be reasonably drawn from all the evidence, and disregard all defendant's evidence unfavorable to plaintiff. Veterans Linoleum & Rug, Inc., v. Tureen, Mo.App., 432 S.W.2d 372, 374[1].

Plaintiff, in answer to an advertisement in a newspaper, met with the branch manager of the St. Louis office in March, 1965. At this first meeting they discussed opportunity for employment with defendant, the requirements of the job of salesman and compensation. Plaintiff related it was explained to him that he would receive a commission of fifty per cent on life insurance premiums and twenty-five per cent commission on accident and health insurance premiums. He was to have a draw or advance on his commissions the first three months of $550.00, receive the use of a company car and expenses. At the end of three months, he had to justify his draw with his production of sales. If he did not produce enough to justify the draw, then the amount would drop the next month. He was told this draw was not a salary. After this first meeting, he again met with the branch manager and at this time the meeting was attended by the vice-president of defendant company. The representatives of defendant company informed plaintiff that if he wanted the job under the conditions outlined, he was acceptable to them. Plaintiff informed them he wanted the job and accepted the offer. After a training period of about ten days he went to work. This was mid-April of 1965. He continued thereafter with defendant as an insurance salesman until April, 1967, when the company notified him his job was terminated.

During the two years plaintiff sold for defendant, his commissions totalled more than his draw. And so when he was informed that defendant no longer desired his services, he requested payment of the balance. At that time the manager told him that there was nothing due. Business machine records of the defendant were introduced in evidence to show credits on production of premium in excess of the payments to plaintiff. There were also certain large policies sold by plaintiff on which he claimed commission due.

The contention is not now made that the judgment is in excess of the amount proven by plaintiff to be due him but rather that he was hired on an incentive salary program, not on a commission-draw basis. Therefore, since he was merely paid a salary, defendant owed plaintiff nothing at the termination of his employment other than the salary due at that time. There was, of course, no written contract of employment. A publication of defendant explaining the incentive salary program was introduced in the evidence by defendant, but plaintiff testified he saw this pamphlet only about three or four months before his discharge. There had only been some talk about the program before. Furthermore, the manager admitted in his testimony that although he contended plaintiff was employed under the incentive salary program, this program was not formally put into effect until July 1, 1965. And after the plan was put into effect some agents working out of the St. Louis office still remained on a commission basis and other commission agents were employed thereafter.

Defendant relies heavily in this appeal upon contradictory statements made by plaintiff in his testimony at time of trial and those given in a prior deposition. The first part of the deposition used appears in the record in cross-examination of the plaintiff in which he admitted certain questions posed and answers given. In this exchange, after reference was made to the two meetings, one with the manager and the next with both the manager and the vice-president, a question was asked whether the matter of compensation came up for discussion. There was no indication in the

question at which meeting this subject was discussed, and the answer made no reference. Plaintiff replied that he thought the "original" compensation was mentioned. Then asked as to what that was, he replied "I believe it was five hundred and fifty dollars." As to other compensation he said a car and travel expenses were to be furnished, and nothing else. Again, defendant's counsel read as admission against interest another part of the deposition bearing on the incentive salary program. Here plaintiff said he first became acquainted with the plan when he was hired by defendant. He further declared that he thought he was the first one to go on this plan at the time of his employment. Yet at the same time in the same deposition in answer to a question that submitted a proposition "But your earnings from the company would be received as a salary * * *?", he replied, no, that he would receive a draw against future commissions. Defendant also submits that plaintiff admitted in his cross-examination at trial that the written schedule regarding his earnings was "production credit" schedule in the incentive salary program as set out in the company booklet, and points out that it makes no mention of commissions.

Defendant now maintains that plaintiff's testimony is self-destructive, in that it supports either of two contradictory inferences concerning the ultimate fact issue as to the method of arriving at his compensation, and since there was no other fact or circumstance in evidence to show which version was true, no case was made for the jury, citing Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663, and Foerstel v. St. Louis Public Service Co., Mo.App., 241 S.W.2d 792, 798.

Although plaintiff admits that there are some inconsistencies in the deposition and his testimony at time of trial, he asserts there is not such a sharp conflict as to destroy his testimony on the subject of compensation. We find this to be true.

Even though plaintiff declared his "original" compensation was fixed at a certain amount, there was no testimony with respect to the meeting at which this happened. The incentive salary program commenced according to defendant's evidence at a later time and did not cover all employees. And plaintiff, himself, in the deposition maintained that his earnings from the company were not restricted to a salary, but rather he was to receive a draw against future commissions.

■ Such a state of plaintiff's testimony fits the rule that where there is any inconsistency or contradiction between the testimony of a party or witness appearing in a deposition and the testimony given at the trial by that same person, this goes to credibility of the witness and it is for the jury to determine what credence should be given the testimony at trial. This rule was applied by this court to testimony concerning a contract of employment in Truitt v. Rothschild-Greenfield Co., Mo.App., 32 S.W.2d 770, 772[5-7]. See also: Cox v. Moore, Mo.App., 394 S.W.2d 65, 67[1] and cases therein listed in footnote 1.

We further note that although the "production credit" recap from the business machine record contains no mention of commissions, it does set out the premiums earned by plaintiff during the period covered. The incentive salary program booklet further describes the same percentages under the production credit schedule which plaintiff claimed to earn as commission.

If all of defendant's employees had been working exclusively under the incentive salary program introduced by defendant July 1, 1965, the fact that plaintiff stayed on after that time might in itself show a modification of the plan of commission compensation to which plaintiff testified. But defendant admittedly had employees who continued thereafter under a commission compensation plan and others were employed on a commission basis subsequently to that date. Moreover, we must not weigh the evidence. That is for the trial court. Only in exceptional cases are we concerned with this task. Staten v. Estate of Rose, Mo., 435 S.W.2d 679, 683[4].

Considered in the light of all the evidence, plaintiff made a submissible case for compensation of his services on the basis of commissions to be paid him on premiums charged and collected for policies of insurance that he sold. His testimony, although inconsistent in parts, was not so contradictory as to be self-destructive and completely lacking in probative force.

Judgment is affirmed.

PER CURIAM:

The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Accordingly, judgment is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.